Argued and submitted August 27, affirmed December 15, 1999

## STATE OF OREGON,
*Appellant,*

*v.*

## WAYLON KENT PETERSON,
*Respondent.*

(9804-0903m; CA A104133)

991 P2d 1104

Holly A. Vance, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers,

Attorney General, and Michael D. Reynolds, Solicitor General.

Daniel M. Carroll, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

The state appeals from a trial court order suppressing evidence acquired as the result of a motor vehicle stop. The state contends that the trial court erred in holding that the police officer did not have reasonable suspicion at the time of the stop to believe that defendant had committed a crime. ORS 131.615(1). We review for errors of law and affirm. ORS 138.220.

On April 5, 1998, at approximately 3:51 a.m., Albany Police Officer Corder was dispatched to a motel to investigate "some sort of argument and a suspicious vehicle." The dispatcher told Corder that a man was throwing things, perhaps beer bottles, at a dumpster and that the man may have been following a woman, who was possibly present at a nearby gas station.

On arriving at the scene, Corder spoke with the motel clerk. The clerk told Corder that a man and woman had been arguing near a black pickup and that she had "heard glass breaking and items that sounded like bottles being thrown against the dumpster." The clerk stated that the man left the area in the pickup and that she last saw the woman near the gas station located directly southwest of the motel. Corder proceeded to the station, where he spoke with the attendant. The attendant told Corder that he had seen a man and woman arguing near a "black, newer Toyota pickup" and that the pickup had pulled into the adjacent shopping center parking lot. Based on the witnesses' statements, Corder suspected that "possibly domestic violence [was] occurring between * * * the two occupants of the pickup."

Corder then drove his marked patrol vehicle into the shopping center parking lot and observed a black 1995 Toyota pickup. He positioned his patrol vehicle behind the pickup and saw defendant in the driver's seat and a woman in the passenger seat. Corder turned on his spotlight and started to leave his vehicle when he saw "the witness turn and look at me." After Corder left his vehicle and started walking towards the pickup, the pickup took a "quick right U-turn very rapidly" and proceeded towards a fast food drive-thru window line. Not knowing whether "the vehicle was

going to flee the area," Corder re-entered his patrol vehicle, turned on his emergency lights and stopped the pickup.

Based on evidence gathered as a result of the stop, defendant was arrested and charged with driving under the influence of intoxicants, ORS 813.010, and driving while suspended, ORS 811.182. Defendant moved to suppress the evidence on the ground that, at the time of the stop, Corder did not have reasonable suspicion to believe that defendant had committed any crime. The state argued that the stop was valid because the information known to Corder at the time of the stop gave the officer reason to suspect that "domestic violence" was taking place. The trial court found that the state had not "proven that there was reasonable suspicion to believe that a crime had been committed" and granted the motion to suppress. This appeal by the state followed. ORS 138.060(3).

On appeal, the state argues that Corder's suspicion that the female was a victim of "domestic violence," justified the stop of defendant's vehicle in order to ensure that she was safe. In response, defendant asserts that Corder was not authorized to stop defendant's vehicle because Corder did not point to any specific behavior from which he could have reasonably inferred that defendant had committed a crime and, thus, the stop was invalid.

■■ As a threshold matter, we reject the state's contention that the officer safety doctrine articulated in *State v. Bates*, 304 Or 519, 524-25, 747 P2d 991 (1987), justified the stop of defendant's vehicle in this case. In order to invoke that doctrine, the officer must be *engaged* in "the course of a lawful encounter" with the citizen whom the officer perceives to be a threat. *Id.* That was not the circumstance in this case. Here, the state attempts to use an alleged officer safety concern to justify the *initiation* of the ensuing stop. The state cites no authority for such an extension of the doctrine on which it relies. Even if the doctrine were otherwise applicable, however, Corder articulated no particularized facts to justify, as the doctrine requires, a reasonable fear that defendant posed an immediate threat of physical injury to anyone. *State v. Suter*, 157 Or App 107, 111, 969 P2d 1035 (1998). Accordingly, the officer safety doctrine is inapplicable.

■     In order to justify a criminal investigatory stop, the officer must *"reasonably [suspect]* that the person has committed or is about to commit a crime." ORS 131.615(1) (emphasis added). "Reasonably suspect" means that the officer subjectively holds a belief, which is objectively reasonable under the totality of the circumstances, that the person stopped has committed or is about to commit a crime. ORS 131.605(5); *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997). Based on that standard, we first ask whether Corder subjectively held a belief that defendant had committed or was about to commit a crime. If so, then we determine whether that belief was objectively reasonable under the totality of the circumstances. In this case, the trial court did not expressly state whether it found that Corder had the requisite subjective belief. However, even if the trial court had found that Corder subjectively believed that a crime had been or was about to be committed, we conclude that any such belief would have been unreasonable under the totality of the circumstances.

To address the reasonableness issue, we review Corder's testimony at the suppression hearing. Our purpose is to determine whether Corder pointed to *"specific and articulable* facts that are sufficient as a matter of law to give rise to an inference that a reasonable officer would hold the required subjective belief." *Id.* at 12 (emphasis added).

Corder testified that he *knew*, based on the dispatch report and the witnesses' statements, only the following: A man and woman were arguing outside a black pickup truck; someone, maybe the man, was throwing "things," possibly bottles, into or against a dumpster; the woman was last seen by one of the witnesses leaving the area on foot; the man may have followed her in the pickup, and the pickup had pulled into a nearby shopping center parking lot. He also knew, based on his personal observations, that defendant and a female passenger were sitting in a black pickup truck that was parked in the shopping center parking lot and that defendant left when Corder attempted to approach the vehicle. Those facts alone do not add up to specific and articulable facts pointing to the commission or impending commission of a crime involving domestic violence. People frequently argue and behave churlishly. Corder had no information that either

person had threatened, injured or attempted to injure or, for that matter, thrown anything at or toward the other person. In short, Corder had no information supporting a reasonable belief that a crime involving domestic violence was afoot.[1]

For two separate reasons, defendant's departure from the parking lot does not alter our conclusion. First, Corder did not testify that *defendant* actually observed him before making his quick U-turn, but, rather, he testified that the *"witness* turned and looked at me." The record does not establish whether Corder intended to refer to defendant, his passenger, or someone else. Second, even if defendant saw Corder approach and then drove away in reaction, that departure could not contribute to reasonable suspicion that defendant had committed or was about to commit a crime. *See State v. Holmes*, 311 Or 400, 409-11, 813 P2d 28 (1991) (citizen is free to leave an encounter without explanation).

The state contends that we have previously upheld stops on less compelling facts than these. Always wary of the risks of fact-matching, we nonetheless comment briefly on the state's reliance on *State v. Schedler*, 47 Or App 181, 614 P2d 591, *rev den* 290 Or 149 (1980). In *Schedler*, we upheld a vehicle stop based on the facts that the officer heard glass breaking in the police parking lot behind his station and saw defendant's car driving out of the alley behind the station immediately thereafter. The officer suspected that the driver had committed burglary or vandalism. In concluding that the officer had reasonable suspicion to stop the defendant's vehicle, we emphasized the improbability that a nonpolice vehicle would be leaving the parking lot late at night. *Id.* at 185. Here, by contrast, it was not improbable for defendant's car to be located in the area because a nearby fast food restaurant, gas station, and motel were open at the time of the stop. Moreover, Corder did not rely on the breaking glass heard by the motel clerk as any evidence that a *property* crime had been committed. Accordingly, *Schedler* is distinguishable.

---

[1] The state does not contend that Corder subjectively believed that any crime not involving domestic violence had been or was about to be committed. Therefore, it is not necessary to consider whether a belief that other criminal activity was afoot would have been reasonable.

In conclusion, had Corder subjectively believed that defendant had committed or was about to commit a crime when the stop occurred, that belief would have been objectively unreasonable. The trial court did not err in granting defendant's motion to suppress.

Affirmed.