Submitted on record and briefs September 2, 2004, reversed and remanded with instructions to permit defendant to withdraw plea February 16, 2005

STATE OF OREGON,
*Respondent,*

*v.*

DENNIS ALLEN CRANDALL,
*Appellant.*

F-08361; A119207

108 P3d 16

James N. Varner filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Elizabeth A. Gordon, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals a judgment of conviction for unlawful possession of a controlled substance. ORS 475.992. He made a pretrial motion to suppress statements and physical evidence, including a baggie containing methamphetamine, which he contended was obtained as the product of an illegal stop. The trial court denied the motion, and defendant was convicted after entering a conditional guilty plea. On appeal, he assigns error to the trial court's denial of his pretrial motion to suppress evidence. We reverse and remand to the trial court with instructions to permit defendant to withdraw his plea. ORS 135.335(3).

The facts are undisputed. La Grande police officers responded to a loud-noise complaint at an apartment complex at approximately 1:00 a.m. Several uniformed officers arrived at the scene. They heard the faint sound of music through the door of the apartment identified in the complaint and knocked on the door but there was no answer. While awaiting a response, Officer Welberg observed two people leaving another apartment some distance away. The officer recognized them because he had encountered them previously in connection with the investigation of drug-related offenses. Defendant walked out of the same apartment a few minutes later and, on seeing the officer, froze for a moment. He then closed the apartment door and turned and walked away in the opposite direction, not making eye contact with the officer. Welberg testified at the hearing, "I would describe it as him coming out of the apartment, seeing us and going, oh shit."

As defendant walked away, Welberg called to defendant from a distance of about 100 feet to "stop" and "come here." Defendant stopped, turned around, and walked back in Welberg's direction through the parking lot. En route, defendant ducked down between two cars out of Welberg's sight but in sight of two other officers, who thought they saw defendant place something underneath one of the cars. As Welberg approached defendant, another officer followed behind defendant and retrieved a baggie containing three bindles of methamphetamine from underneath one of the

cars where defendant had ducked down. Defendant was arrested and charged with possession of a controlled substance.

Before trial, defendant filed a motion to suppress all statements and physical evidence derived from the stop, including evidence of the baggie and its contents, arguing that he was stopped without reasonable suspicion, in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. At the suppression hearing, the trial court denied defendant's motion, concluding that Welberg's contact with defendant constituted an encounter, not a stop. Significantly, the trial court also found that Welberg did not, at the time of the encounter, possess reasonable suspicion sufficient to warrant a stop.[1]

On review of denial of a motion to suppress, we are bound by the trial court's findings of fact if there is evidence in the record to support them; our task is to determine whether the trial court applied legal principles correctly to those facts. *State v. Ehly,* 317 Or 66, 75, 854 P2d 421 (1993). Here, we must first determine whether the encounter between defendant and Welberg constituted a stop. ORS 131.605(6) defines a stop as a "temporary restraint of a person's liberty by a peace officer lawfully present in any place." A person is "seized" and, hence, "stopped" for purposes of Article I, section 9, of the Oregon Constitution only when the person reasonably believes that the officer has "intentionally and significantly restrict[ed], interfere[d] with, or otherwise deprive[d]" the person of "liberty or freedom of movement."

---

[1] Specifically, the trial court made the following oral findings of fact:

"Certainly, in this case [Welberg] did cause [defendant] to change his direction, but in doing so it was no different from anybody calling out to somebody saying, hello there, let's talk. All of us who work with people sometimes see people a block away and we call out to them and they stop and either we go over to them or they come to us. It makes no difference which direction a party takes to complete the request to stop and converse. * * * What is unique about this * * * encounter * * * is the following. Had [Welberg] once [defendant] was in his presence frisked him and found drugs then we'd have a real issue because I am specifically finding that * * * Welberg had no basis to reasonably suspect that [defendant] was about to commit a crime or had committed a crime, so he had absolutely no reason * * * to frisk or make the kind of inquiries that are allowed under [ORS 131.615]."

*State v. Holmes,* 311 Or 400, 409, 813 P2d 28 (1991). An officer's conduct rises to the level of a seizure when the officer "engages in conduct significantly beyond that accepted in ordinary social intercourse." *Id.* at 410. Conversely, no seizure occurs where the officer, "even if making inquiries a private citizen would not, has otherwise conducted himself in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens." *Id.* A "stop" is distinguishable from ordinary types of police/citizen encounters in which questioning occurs through mere conversation without any restraint of liberty in that the former is legally justified only by reasonable suspicion of criminal activity, while the latter requires no justification. *State v. Lawton,* 194 Or App 190, 193, 94 P3d 154 (2004), *rev den,* 338 Or 16 (2005).

"[A]n officer's signal or command to a citizen to 'stop' physically does not automatically transform the police-citizen encounter into a 'stop'—and, hence, a seizure—in the constitutional sense." *State v. Blair/Vanis,* 171 Or App 162, 168, 14 P3d 660 (2000), *rev den,* 332 Or 137 (2001). However, an officer's conduct may significantly interfere with an individual's liberty and freedom of movement if the individual is forced to alter his course of conduct or is summoned away from a task. *See, e.g., State v. Johnson,* 105 Or App 587, 590, 805 P2d 747 (1991) (a defendant who walked 15 feet toward police officers and away from the direction he had been going, in response to one officer's request, had been stopped, because a reasonable person in the defendant's position would conclude that he was being summoned by the officers and was not free to continue in his original direction); *State v. Canape,* 46 Or App 453, 458, 611 P2d 1190 (1980) (a defendant on foot who was approached by two uniformed officers in a marked patrol car and was required to alter his course in order to comply with a request to retrieve his identification from his car was stopped).

■ We conclude that defendant was stopped when Welberg told him to "stop" and to "come here" to where Welberg was standing. The officer was in uniform, wearing a badge, and carrying a gun. The officer's directive required defendant to turn around, reverse his course, and walk toward the officer, who was standing about 100 feet away.

Under the circumstances, it is highly unlikely that defendant felt free to walk away. The restraint placed on defendant's liberty therefore constituted a stop.

■   If an encounter does amount to a stop, the officer must have reasonable suspicion that the person stopped has committed a crime. *Holmes,* 311 Or at 407. As noted, the trial court found that Welberg did not have reasonable suspicion to stop defendant, and the state has not challenged that determination. Accordingly, we conclude that defendant was unlawfully stopped.

■   Finally, we must address what effect Welberg's unlawful restraint of defendant had on the discovery of the baggie. The state contends that, even if the defendant was unlawfully stopped, there was no causal connection between any illegal conduct and the discovery of the drugs because defendant abandoned the baggie under the car before approaching Welberg, and he was not compelled to do so. In deciding whether a defendant has abandoned protected possessory or privacy interests, we examine the totality of the circumstances. *State v. Kauffman,* 162 Or App 402, 407, 986 P2d 697 (1999), *rev den*, 329 Or 650 (2000).

In *State v. Morton,* 326 Or 466, 953 P2d 374 (1998), the defendant dropped a plastic container containing drugs during an unlawful arrest and denied that the container was hers. The Supreme Court held that the defendant's actions in dropping the container and disclaiming any interest in it were inseparable from the unlawful arrest. The court concluded that the defendant did not abandon her interests in the container:

> "[The] defendant dropped the container only after the police had begun the process of taking [the] defendant into custody pursuant to the arrest warrant. Thus, in this instance, the state cannot separate the act of arrest from the dropping of the container; the seizure can be proper only if the arrest itself was authorized by a valid warrant."

*Id.* at 470.

In contrast to *Morton,* in *State v. Knox,* 160 Or App 668, 676, 984 P2d 294, *rev den,* 329 Or 527 (1999), the issue was whether the defendant's post-arrest relinquishment of a

pouch containing cocaine in the back of a police car was obtained by the exploitation of an earlier illegal search of his own vehicle that led to his arrest. We reasoned:

> "The 'exploitation' analysis used in [*State v.*] *Rodriguez*, [317 Or 27, 854 P2d 399 (1993),] is applicable to the facts in *Morton* and to this case. Although the *Morton* court did not expressly apply an 'exploitation' analysis, it is apparent that that is what the court employed. In holding that the container was subject to suppression, the court concluded that the dropping of the container could not be separated from the process of the execution of the arrest based on an invalid warrant. The causal connection between the arrest and the dropping of the container was not interrupted by any intervening events, and the unlawful police conduct directly coerced [the defendant's] actions. To permit the admissibility of the evidence in *Morton* would be to permit the police to exploit or take advantage of the unlawful arrest.

> "Here, in contrast to *Morton,* the illegal search in the parking lot merely began the chain of events that led to the subsequent discovery of the pouch in the patrol car at the police station. Factually, the seizure of the pouch was *separate* from any police illegality. As the court noted in *Rodriguez,* the mere physical presence of the officer in the police parking lot because of the events that began with the search of [the] defendant's car does not, by itself, constitute an exploitation of the illegal search. The search and the arrest for what was discovered in [the] defendant's car were complete when [the] defendant was handcuffed and placed in the patrol car. His transportation to the police station during which his alleged deposit occurred was an event that intervened between the illegal search and seizure and the seizure at issue here."

*Knox,* 160 Or App at 678-79 (emphasis in original; citation omitted).

■ Here, as in *Morton,* defendant's act of discarding the baggie cannot be separated from the police action. Unlike in *Knox,* there were no intervening events between the illegal stop and defendant dropping the drugs under the car. Defendant's actions took place immediately after the officer's instruction to stop and to come to where the officer was

standing; he discarded the baggie while en route to the officer. There is nothing in the record that would support a determination that defendant's actions were not prompted by the illegal stop. Under all the circumstances here, we conclude that defendant did not abandon his privacy and possessory interests in the baggie and its contents.[2]

Reversed and remanded with instructions to permit defendant to withdraw plea.

---

[2] Because we reverse the trial court's denial of defendant's motion to suppress under Article I, section 9, of the Oregon Constitution, we do not reach defendant's federal constitutional claim.