Argued and submitted October 3, reversed and remanded with instructions to reinstate DMV's order suspending driving privileges November 16, 2005, petition for review denied March 21, 2006 (340 Or 308)

In the Matter of the Suspension of
the Driving Privileges of

Charles M. CIBULA,
*Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Appellant.*

0404-03898; A125703

123 P3d 382

Kaye E. McDonald, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Wayne Mackeson argued the cause for respondent. With him on the joint brief were Birmingham & Mackeson, and Andrew E. Aubertine and Aubertine Law Firm.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

HASELTON, P. J.

---

* Rosenblum, J., *vice* Richardson, S. J.

**HASELTON, P. J.**

The Oregon Department of Transportation, Driver and Motor Vehicles Services Branch (DMV), appeals the circuit court's judgment setting aside its order suspending petitioner's driving privileges after he refused to take a chemical breath test following his arrest for driving under the influence of intoxicants (DUII). ORS 813.130(3); ORS 813.410(1). The circuit court determined that certain findings in DMV's order were not supported by substantial evidence and that, without those findings, the record failed to establish that the stop that culminated in petitioner's arrest was based on objectively reasonable suspicion of criminal activity. We review DMV's order directly, *Coulter v. DMV*, 168 Or App 442, 444, 4 P3d 89 (2000), and conclude that, even without the disputed findings, the balance of the administrative findings, which were supported by substantial evidence, establish the lawfulness of the predicate stop. ORS 813.450(4)(c), (5). Accordingly, we reverse the circuit court's order.

We review the facts from the administrative record directly. *Robinson v. DMV*, 191 Or App 122, 124, 80 P3d 536 (2003). We may reverse the administrative law judge's (ALJ) order only if it is not supported by substantial evidence. ORS 813.450(4)(c). Substantial evidence is evidence that could support a reasonable person's factual finding. *Bissett v. MVD*, 122 Or App 622, 625, 857 P2d 913 (1993). After reviewing the administrative record, we determine that the following facts, as found in DMV's order, are supported by substantial evidence.

Shortly after 3:00 a.m. on the morning of February 25, 2004, Portland Police Officer Travis Fields went to a Plaid Pantry convenience store to speak with the clerk about a "beer run" earlier in the evening. A "beer run" is a theft where a person "goes into a store, grabs some alcohol (usually beer) and runs out of the store without paying, usually to a waiting vehicle."

Fields knew that alcohol cannot legally be sold in Portland after 3:00 a.m. As he approached the store, Fields noticed that the parking lot was almost empty but that a car was parked on the street just to the north of the Plaid Pantry.

The car's passenger door was open. Just as Fields noticed the car, he saw a man (later identified as petitioner's passenger) come running out of the store with two glass bottles in his hands. According to Fields, the doors to the store "[flew] open," and the man "just barrel[ed] through the door full speed running straight to the car." When he reached the car, the man "jumped in the passenger door * * * and the vehicle began to take off before the door had even been closed." The car's speed was normal as it moved away from the curb.

Fields did not see the bottles clearly enough to know what was in them—they "could've been pop or anything." However, based on the circumstances, he believed that he had witnessed a "beer run." Based on that belief, Fields stopped petitioner's vehicle. That stop culminated in petitioner's arrest for DUII. Petitioner's subsequent refusal to take a breath test caused DMV to seek to suspend his driving privileges.

Following an administrative hearing on the proposed suspension, the ALJ issued a final order that rejected petitioner's arguments that the underlying stop was unsupported by objective reasonable suspicion:

> "The officer was going to the store in order to talk to the store clerk about a previous 'beer run' that had occurred at the store. It was after three in the morning and the officer was aware that beer is not sold after three a.m. He observed a car parked suspiciously with its passenger door open beside the store. He then observed someone exit the store at a run, carrying what *appeared to be bottles of beer*. The officer then observed the person jump into the awaiting car, and the car depart before the passenger door could even close. Thus, the officer had a reasonable suspicion that the crime of theft had been committed based on objective and observable facts. An officer's suspicion can be based on the reasonable inferences drawn from the objective and observable facts. Such was the case here. The officer, investigating a previous 'beer run' at the location, identifies what appears to be the identical crime in progress hours later, based on observable facts. This is not a case where the officer simply observed 'suspicious persons in a suspicious vehicle.' The possibility that there may be a non-criminal explanation for the facts observed or that the officer's suspicion may be wrong does not defeat the reasonableness of the suspicion."

(Citations omitted; emphasis added.)[1]

Petitioner appealed to the circuit court, arguing that some of the ALJ's findings of fact were not supported by substantial evidence. ORS 813.450(4)(c). The circuit court agreed, "vacated" some of the ALJ's findings of fact,[2] and held that the remaining findings did not support the conclusion that Fields had a reasonable suspicion to stop petitioner.

On appeal, DMV contends, principally, that the circuit court erred in its determination that the stop was not based on objective reasonable suspicion. For the reasons that follow, we agree.

ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed or is about to commit a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

The reasonable suspicion standard is "intended to be less than the standard for probable cause * * *." *State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977). The officer must act under a "belief that is reasonable under the totality of the circumstances existing at the time" of the stop, ORS 131.605(5), and that belief must be objectively based on "observable facts." *Valdez*, 277 Or at 629. Thus, if an officer "is able to point to specific and articulable facts which give rise to the inference that criminal activity is afoot, the officer has

---

[1] Before the circuit court, petitioner argued, in part, that the emphasized language was not supported by substantial evidence given Fields's admission that they "could've been pop or anything." The circuit court agreed. So do we. However, the ALJ's error in that regard is ultimately immaterial, given that the findings that are supported by substantial evidence establish reasonable suspicion.

[2] *See, e.g.*, n 1. In addition, the court "vacated," as unsupported by substantial evidence, findings by the ALJ that petitioner's car had been parked "suspiciously," that Fields "believed" that the bottles contained alcohol, and that petitioner's car "accelerated immediately" away from the curb.

We agree with the circuit court as to the last of those findings: Fields testified that petitioner's car moved away in a "normal manner." However, we further conclude that the ALJ's characterization of Fields's "belief" regarding the bottles comported with Fields's stated belief that he had witnessed a "beer run." Finally, whatever the ALJ intended to convey by his use of "suspiciously," it is uncontroverted that Fields, a police officer, immediately noted that petitioner's car was parked in the street, with its passenger side door open, rather than in the nearly empty parking lot.

'reasonable suspicion[.]' " *Id.* at 626. Further—and significantly here—"[t]he possibility that there may be a noncriminal explanation for the facts observed * * * does not defeat the reasonableness of the suspicion." *State v. Kolendar*, 100 Or App 319, 323, 786 P2d 199, *rev den*, 309 Or 698 (1990).

Here, the facts that Fields observed were susceptible to either an innocent or a culpable explanation. It could have been that the passenger "barreling" through the convenience store doors and running "full speed," bottles in hand, to the waiting car was merely in a hurry to get soda pop back to an all-night party—and that petitioner, who drove away from the curb before the passenger side door was closed, was similarly impelled. Or it could be—consistent with Fields's experience—that the passenger had just shoplifted alcoholic beverages, which could not be purchased at that hour, and that he and petitioner (who was parked with the passenger side door open so as to facilitate a getaway) were partners in a "beer run." The former, innocent possibility does not preclude reasonable suspicion of, and a stop based on, the latter. *See Kolendar*, 100 Or App at 323.

Petitioner nevertheless invokes a line of cases involving suspiciously parked cars in which we concluded that stops were not supported by reasonable suspicion. *State v. Messer*, 71 Or App 506, 692 P2d 713 (1984), is illustrative. There, officers observed the defendant and a passenger sitting in a truck at 3:45 a.m. in a dimly lit parking lot. All the retail stores in the area were closed, and the defendant was parked only a few feet from the wall of one of the stores. The officer spoke with the defendant, noticed a knife inside, and then ordered the men out of the truck. In the process, the officer found evidence that led to the defendant's conviction. *Id.* at 508.

We held that the facts known to the officer at the time that he ordered the defendant from his truck did not satisfy the reasonable suspicion standard. *Id.* In so holding, we distinguished that case from a series of other cases in which we had found reasonable suspicion. We explained that the dispositive distinction between the cases was that "[t]he defendants in all of [the cases finding reasonable suspicion]

*acted* in a suspicious fashion; [the] defendant in [*Messer*] simply sat in his vehicle." *Id.* at 509 (emphasis in original).

This case involves much more than a "suspiciously" parked automobile. As noted, petitioner's passenger's actions comported, in Fields's experience, with those of a person perpetrating a "beer run." Petitioner's actions in parking on the street with the passenger side door open and then driving away before the passenger side door was shut corroborated that perception. Thus, the material administrative findings are supported by substantial evidence and establish that Fields had reasonable suspicion to stop petitioner's car.

Reversed and remanded with instructions to reinstate DMV's order suspending driving privileges.