Argued and submitted May 3, decision of Court of Appeals reversed;
judgment of circuit court affirmed May 25, 2006

STATE OF OREGON,
*Petitioner on Review,*

*v.*

DENNIS ALLEN CRANDALL,
*Respondent on Review.*

(CC F08361; CA A119207; SC S52626)

136 P3d 30

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

James N. Varner, Newberg, argued the cause and filed the brief for respondent on review.

KISTLER, J.

## KISTLER, J.

In this criminal case, a police officer directed defendant to "stop" and "come here" as defendant was leaving an apartment in La Grande. Defendant obeyed that direction but, before he reached the officer, put a clear plastic "baggie" containing a controlled substance underneath one of the cars in the apartment parking lot. Having concluded that the officer stopped defendant without reasonable suspicion, the Court of Appeals held that the trial court should have suppressed the baggie and its contents because the state had not proved that defendant had abandoned it. *State v. Crandall*, 197 Or App 591, 108 P3d 16 (2005). We allowed review to consider whether the Court of Appeals applied the correct legal standard and now reverse its decision.

Three officers responded to a loud-noise complaint at an apartment complex in La Grande. They heard music through the door of the apartment identified in the complaint, knocked on the door, but got no answer. While he was waiting for a response, Officer Welberg saw two people leaving an apartment on the other side of the apartment complex. Welberg knew both persons, having encountered them in connection with an earlier investigation of drug-related offenses. Defendant walked out of the same apartment a few minutes later and, on seeing the officer, froze for a moment. As Welberg later testified, "I would describe it as him coming out of the apartment, seeing us and going, oh shit." Defendant then closed the apartment door, turned, and quickly began walking away from the officers.

As noted, Welberg called to defendant to "stop" and "come here." Defendant stopped, turned around, and walked back in Welberg's direction through the parking lot. As he was walking toward Welberg and while he was out of Welberg's line of sight, defendant ducked down between two cars and put something underneath one of them. The two other officers, who had a different vantage point, saw defendant's actions and retrieved a clear plastic baggie that appeared to contain three bindles of methamphetamine. The officers arrested defendant and charged him with possessing a controlled substance.

Contending that Welberg had stopped him without reasonable suspicion in violation of Article I, section 9, of the Oregon Constitution,[1] defendant filed a motion to suppress the evidence derived from the stop. The trial court denied that motion, finding that no stop had occurred within the meaning of Article I, section 9. Having lost his motion to suppress, defendant entered a conditional guilty plea and, on appeal, challenged the trial court's ruling denying his suppression motion. *See* ORS 135.335(3) (authorizing defendants to enter conditional guilty pleas reserving right, in writing, to appeal adverse pretrial rulings).

The Court of Appeals reversed. *Crandall*, 197 Or App at 598. It reasoned that the officer's direction to defendant constituted a stop within the meaning of Article I, section 9, and that the officer lacked reasonable suspicion to justify temporarily seizing defendant. *Id.* at 595-96. The court then turned to the question whether the officers' discovery of the baggie was a product of the unlawful stop. On that issue, the court appeared to conclude, at least in part, that the question whether the discovery of the baggie derived from the unlawful stop turned on whether defendant had "abandon[ed] his privacy and possessory interests in the baggie and its contents." *See id.* at 598 (holding that defendant had not abandoned those interests). Finding no abandonment, the Court of Appeals reversed the trial court's judgment and remanded for further proceedings. *Id.*

On review, the state does not challenge the Court of Appeals' holding that Welberg had stopped defendant without reasonable suspicion in violation of Article I, section 9. The state focuses its argument instead on the legal standard that the Court of Appeals used to determine whether the discovery of the baggie derived from or was the product of the unlawful stop. It contends that the Court of Appeals erred in using the concept of "abandonment" to make that determination. As noted, we allowed the state's petition for review to decide that issue.[2]

---

[1] Defendant has not argued either on review or before the Court of Appeals that Welberg stopped him in violation of the Fourth Amendment to the United States Constitution.

[2] The state has not petitioned for review of the question whether the officer's direction to defendant constituted a stop, and we assume for the purposes of this

The question whether the officers constitutionally could retrieve the baggie that defendant put underneath the car presents two separate issues. The first is whether the officers' observation of the baggie constituted a search within the meaning of Article I, section 9. If it did not, the remaining issue is whether the court still should suppress the evidence because defendant's act of placing the baggie under the car derived from or was the product of the unlawful stop.

■ Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." The question whether the officers engaged in a "search" for the purposes of Article I, section 9, turns on whether they invaded defendant's privacy interest. *See State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986) (stating that standard). In this case, defendant was walking through a parking lot open to the residents of the apartment complex and their visitors. When he ducked down and put the baggie underneath one of the parked cars, defendant left the baggie where any person using the parking lot could have seen it. On those facts, defendant had no right to privacy in the baggie, and the officers did not engage in a search when they discovered what any member of the public could have seen—a baggie that appeared to contain a controlled substance lying under someone's car. *See State v. Wacker*, 317 Or 419, 426-27, 856 P2d 1029 (1993) (no search where police used nightscope to see activities in tavern parking lot visible to public).[3]

The remaining issue is whether defendant still may seek to suppress the baggie on the theory that its discovery derived from or was the product of an unlawful stop. Three cases bear on that issue: *State v. Hall*, 339 Or 7, 115 P3d 908 (2005); *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993); and *State v. Kennedy*, 290 Or 493, 624 P2d 99 (1981). Because the facts in those cases are important to understanding the legal principles they announce, we describe each case briefly.

---

opinion that it did. *See State v. Hall*, 339 Or 7, 19, 115 P3d 908 (2005) (deciding similar issue).

[3] Similarly, having seen a baggie that appeared to contain a controlled substance, the officers properly seized it. *See Owens*, 302 Or at 207 (discussing when officers may seize suspected contraband).

In *Kennedy*, the police approached the defendant as he was leaving the Portland Airport. 290 Or at 495. Acting on information that the defendant fit a "drug smuggler's profile," the officers asked to talk to him. *Id.* When the defendant asked one of the officers why they wanted to talk, the officer explained that he "had information that led [him] to believe that [the defendant] may be carrying narcotics on his person or in his luggage." *Id.* at 496. "Defendant denied that he was carrying narcotics and said, 'Would you like to search my luggage.' " *Id.* The court noted that, when the defendant made that offer, the officer "had not made any request for consent to search [the] defendant or his luggage." *Id.* During the ensuing search, the officers found and seized a vial with cocaine residue on it. *Id.*

In deciding whether that evidence was the product of an unlawful stop, this court assumed that the officers had stopped the defendant and that they lacked reasonable suspicion to do so. *Id.* at 499. The court also recognized that the stop was the "but for" cause of the officers' discovery of the evidence. *Id.* at 500-01. Relying on, among other things, the "defendant's offer to let [the officer] search his luggage without a prior request for consent," the court concluded that the discovery of the evidence was sufficiently attenuated from any illegality to say that it did not derive from it. *Id.* at 504-06.

The facts in *Rodriguez* are similar. In that case, state and federal officers arrested the defendant at his home pursuant to an arrest warrant. 317 Or at 29. The officers advised the defendant of his *Miranda* rights. *Id.* at 30. In response to the question, "Do you have any drugs or guns in the house," the defendant replied, "No, go ahead and look." *Id.* The officers did so and found a gun, which the defendant later sought to suppress as the product of an unlawful arrest. As in *Kennedy*, the court assumed that the arrest violated Article I, section 9. *Id.* at 37. The court also recognized that the arrest was the "but for" cause of defendant's statement, "Go ahead and look." *Id.* at 39-40. The court concluded, however, that defendant's spontaneous offer to search his house sufficiently attenuated the discovery of the gun and upheld the denial of his motion to suppress. *Id.* at 41.

The third case presents a variation on that pattern. In *Hall*, a police officer stopped the defendant as he was walking along the street. 339 Or at 10. After running a records check, the officer noticed a bulge in the defendant's jacket and asked if he was carrying any weapons, knives, or illegal drugs. *Id.* When the defendant said that he was not, the officer asked him if he would mind if he searched him. *Id.* The defendant responded, "[N]o, go ahead." *Id.* at 10-11. While searching the defendant, the officer found a small vial of methamphetamine, which the defendant later sought to suppress. *Id.*

This court concluded that the officer had stopped the defendant without reasonable suspicion in violation of Article I, section 9. *Id.* at 19. In analyzing whether the evidence that the officer had discovered as a result of the consent search derived from or was a product of the unlawful stop, the court explained that, if a defendant establishes

> "a minimal factual nexus—that is, at minimum, the existence of a 'but for' relationship—between the evidence sought to be suppressed and prior unlawful police conduct, the state nevertheless may establish that the disputed evidence is admissible under Article I, section 9, by proving that the evidence did not derive from the preceding illegality."

*Id.* at 25. The court reasoned that the state could prove that the evidence did not derive from the preceding illegality by showing (1) that it inevitably would have discovered the evidence; (2) that it had an independent source for the evidence; or (3) that "the preceding violation of the defendant's rights under Article I, section 9, has such a tenuous factual link to the disputed evidence that that unlawful police conduct cannot be viewed properly as the source of that evidence." *Id.*

Focusing on the last inquiry, the *Hall* court held that a voluntary consent to search following an unlawful stop is insufficient—standing alone—to establish that evidence found during the search did not derive from the unlawful stop. *Id.* at 28. The court was careful to make clear, however, that the question whether evidence derives from a prior illegality turns on the particular facts and circumstances of

each case. *Id.* at 35.[4] For example, the court noted that the defendant in *Kennedy* had "volunteered to allow a search without any police prompting" following an unlawful stop. *Hall*, 339 Or at 34. Similarly, the court observed that the defendant in *Rodriguez* "spontaneously had offered his consent to the search" after an officer had presented an invalid arrest warrant and asked him whether he had any guns or drugs in his apartment. *Hall*, 339 Or at 31-32. In explaining that the evidence found during each of those searches was not the product of the earlier illegality, the *Hall* court relied on the defendant's unilateral, voluntary offer to search. *Id.* at 34. Conversely, in holding that the evidence at issue in *Hall* was the product of an illegal stop, the court explained that, "[u]nlike the defendants in *Rodriguez* and *Kennedy*, [the] defendant's grant of consent was not spontaneous but, instead, was made only in response to [the officer's] request that defendant allow a search." *Id.* at 36.

■     The decisions in *Kennedy*, *Rodriguez*, and *Hall* guide our resolution of this case. In deciding to put the baggie containing a controlled substance underneath the car in the parking lot, defendant acted both unilaterally and voluntarily. To be sure, the officer's direction to defendant to "stop" and "come here" was the "but for" cause of defendant's decision to put the baggie underneath the car, but that same "but for" causal connection was also present in both *Kennedy* and *Rodriguez*. However, defendant's unilateral, voluntary decision to put the baggie underneath the car sufficiently attenuated the discovery of that evidence from the prior illegality, in the same way that the defendants' acts in *Kennedy* and *Rodriguez* did.

In reaching a different conclusion, the Court of Appeals relied both on its determination that defendant had

---

[4] After noting that the determination turned on the facts of each case, the court observed:

"we view several considerations to be relevant to that determination, including (1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstances—such as, for example, a police officer informing the defendant of the right to refuse consent [in the context of a consent search]—that mitigated the effect of the unlawful police conduct."

*Hall*, 339 Or at 35.

not "abandon[ed] his privacy and possessory interests in the baggie and its contents" and also on this court's decision in *State v. Morton*, 326 Or 466, 953 P2d 374 (1998). *Crandall*, 197 Or App at 597-98. We conclude that neither of those grounds supports the Court of Appeals decision.

Regarding abandonment, it is certainly true that, if defendant had abandoned the baggie, he would have no basis to complain about the officers' discovery of it. *See State v. Purvis*, 249 Or 404, 410-11, 438 P2d 1002 (1968) (holding that defendant had no right to privacy in abandoned property). However, as this court's decision in *Hall* makes clear, the state need not prove abandonment of physical evidence in order to show that an officer's discovery of that evidence was not the product of a prior illegality. *See* 339 Or at 25 (listing alternative ways of proving that proposition). Among other things, it is sufficient if the state proves attenuation. *See id.* (so stating).[5]

The Court of Appeals also relied on this court's decision in *Morton* in holding that the baggie was the product of the unlawful stop. In *Morton*, a plastic container containing drugs "fell from [the defendant's] jacket" as the officers were placing her under arrest, unlawfully as it turned out. 326 Or at 468. In that case, the act of placing the defendant under arrest caused the container to fall from her jacket, and its discovery was the direct product of the illegality. Here, defendant's unilateral, voluntary decision to put the baggie underneath the parked car was an intervening act that both distinguishes this case from *Morton* and sufficiently attenuates the discovery of the evidence such that we can say that the "unlawful police conduct cannot be viewed properly as the source of that evidence." *See Hall*, 339 Or at 25 (stating proposition). The Court of Appeals erred in ruling that the trial court should have allowed defendant's motion to suppress.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[5] We note that the Court of Appeals did not have the benefit of the decision in *Hall* when it wrote its decision.