Argued and submitted February 21, St. Mary's Academy, Portland, reversed and
remanded August 13, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES M. TURNER,
*Defendant-Appellant.*

Multnomah County Circuit Court
051052782; A131309

191 P3d 697

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief were Ingrid Swenson, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Michael C. Livingston, Senior Assistant Attorney General.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Nelson, Judge pro tempore.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals his conviction for carrying a concealed weapon, namely, a ninja sword. ORS 166.240.[1] The issue on appeal is whether the officer stopped defendant without reasonable suspicion to believe that defendant was carrying a concealed weapon. We review the trial court's denial of the motion to suppress for errors of law, *State v. Woodall*, 181 Or App 213, 217, 45 P3d 484 (2002), and conclude that, having seen a sufficient portion of the ninja sword to identify it as a sword, the officer did not reasonably suspect that it was "concealed" within the meaning of ORS 166.240. His stop of defendant was therefore unlawful, and the trial court erred in denying defendant's motion to suppress a second sword uncovered during the ensuing search. Accordingly, we reverse defendant's conviction.

The facts are not in dispute. Defendant was riding his bicycle in a Critical Mass rally intended to promote bicycling as an alternative means of transportation. Officer Simon was assigned to patrol the rally on bicycle. During the rally, Simon rode next to defendant and saw "three to four inches" of a sword handle wedged between defendant's back and his backpack. Simon testified that, based on his training and experience, there was no doubt in his mind that the object was a "sword or [something] similar."

Simon asked defendant, "What's sticking out of your neck?" Defendant replied that it was a "ninja sword." Simon motioned for him to pull over, and defendant complied. After defendant stopped, Simon removed the sword, which was sheathed, from between defendant's body and his backpack.[2] As he removed it, he discovered the sword was contained in a

---

[1] ORS 166.240(1) provides, in part:

"[A]ny person who carries concealed upon the person any knife having a blade that projects or swings into position by force of a spring or by centrifugal force, any dirk, dagger, ice pick, slungshot, metal knuckles, or any similar instrument by the use of which injury could be inflicted upon the person or property of any other person, commits a Class B misdemeanor."

[2] The record does not reveal whether Simon asked for defendant's consent to remove the first sword. However, Simon requested defendant's consent to search his backpack after removing the first sword. Defendant testified that "[h]e grabbed it out of my bag, the top one, and after that, they asked to look in my—search my bag."

"double sheath, where one sword goes in one end, one in the other." At the time Simon removed the first sword, he had not seen and was not aware of the second sword. He arrested defendant for carrying a concealed weapon based on his discovery of the second sword.

Defendant moved to suppress evidence of the second sword under Article I, section 9, of the Oregon Constitution. Defendant argued, among other things, that Simon lacked reasonable suspicion to "stop" him. *See* ORS 131.605(6) (defining a "stop" as a "temporary restraint of a person's liberty"); *State v. Warner*, 284 Or 147, 161, 585 P2d 681 (1978) (explaining that an officer may arrest a person if justified by probable cause and stop a person if justified by reasonable suspicion). The state contended that Simon and defendant had engaged in mere conversation until Simon discovered the second sword. *See id.* (questioning without any restraint of liberty is a "mere encounter" requiring no justification). At trial, the state did not argue that Simon had reasonable suspicion to believe that defendant was carrying a concealed weapon based on Simon's observation of the first sword. Rather, the state contended only that Simon motioned defendant to pull over "because he was concerned for public safety" and that, once Simon discovered the second sword, he had probable cause to believe that defendant had committed the crime of carrying a concealed weapon and therefore to arrest him.

After hearing testimony from Simon and defendant, the court declined to suppress evidence of the second sword. It concluded that Simon asking defendant "[w]hat's sticking out of your neck?" was "mere conversation" so that Simon did not need reasonable suspicion to initiate the encounter. The trial court also ruled that, even if the encounter rose to the level of a "stop" before Simon discovered the second sword, Simon had reasonable suspicion that the object he saw between defendant's back and backpack was a "sword and could present a safety danger to himself or others." *See* ORS 131.615(1) (officer may stop a person and make reasonable inquiry if the officer "reasonably suspects that a person has committed or is about to commit a crime"). The trial court did not explicitly find that Simon had reasonable suspicion to believe the first sword was concealed. The court found defendant guilty of carrying a concealed weapon.

On appeal, defendant argues that the court erred in concluding that Simon's encounter with him did not constitute a stop. Defendant further contends that Simon lacked reasonable suspicion to believe that he had committed or was about to commit a crime and that the stop was therefore unlawful. The state, "assuming, but not conceding, that the encounter between the officer and defendant constituted a 'stop,'" responds that Simon possessed reasonable suspicion that defendant was carrying a concealed weapon in violation of ORS 166.240.

■ ■ We begin by considering whether Simon stopped defendant before he discovered the second sword. A stop occurs under Article I, section 9, of the Oregon Constitution when a police officer temporarily restrains a person's liberty. *State v. Holmes*, 311 Or 400, 406-07, 813 P2d 28 (1991). To determine whether a person has been stopped, we consider "the totality of the circumstances surrounding the encounter to determine whether the officer has intentionally and significantly interfered with the defendant's liberty, or whether the defendant, in an objectively reasonable manner, believes that his or her liberty has been restricted." *State v. Highley*, 219 Or App 100, 105, 180 P3d 1230 (2008) (citing *Holmes*, 311 Or at 408-10).

■ We agree with the trial court that Simon had not stopped defendant when he asked, "What's sticking out of your neck?" The trial court erred, however, by concluding that Simon did not stop defendant when he motioned for him to pull over. "[A]n officer's conduct may significantly interfere with an individual's liberty and freedom of movement," and therefore constitute a stop, "if the individual is forced to alter his course of conduct or is summoned away from a task." *State v. Crandall*, 197 Or App 591, 595, 108 P3d 16 (2005), *rev'd on other grounds*, 340 Or 645, 136 P3d 30 (2006); *State v. Johnson*, 105 Or App 587, 590-91, 805 P2d 747 (1991) (defendant was stopped by a show of authority when officers summoned him for questioning). Here, defendant's liberty was significantly restricted when Simon, a uniformed officer, directed him to pull over. Defendant testified that he did not believe that he was free to leave and that he altered his course of travel to comply with Simon's direction. A person traveling on a bicycle in an organized rally could reasonably have believed that he was not free to continue after being

questioned by an officer and then directed to alter his course. *See State v. Toevs*, 327 Or 525, 535, 964 P2d 1007 (1998) (whether a stop has occurred depends, in part, on whether a person in the defendant's circumstance could reasonably have felt that he was not free to leave); *State v. Puffenbarger*, 166 Or App 426, 998 P2d 788 (2000); *see also* ORS 814.400(1) ("Every person riding a bicycle upon a public way is subject to the provisions applicable to and has the same rights and duties as the driver of any other vehicle concerning operating on highways."); ORS 811.535 (a driver who fails to obey a police officer commits a Class B traffic violation). The state does not argue otherwise. Accordingly, we conclude that Simon stopped defendant when he motioned for him to pull over.

██ Under Article I, section 9, a stop must be justified by the officer's reasonable suspicion that a person has committed or is about to commit a crime. *See* ORS 131.615(1) (codifying constitutional standard). The trial court made no findings regarding whether Simon possessed reasonable suspicion to believe that defendant was carrying a concealed weapon.[3] We presume, however, that the trial court made implicit findings consistent with its denial of defendant's motion. Accordingly, we next consider whether Simon possessed an objectively reasonable belief that defendant was violating ORS 166.240. The objective reasonableness of Simon's belief turns on whether the sword viewed by Simon was "concealed" within the meaning of the statute.[4]

---

[3] The trial court concluded that Simon had reasonable suspicion to believe that the sword "could present a safety danger to himself or others." To the extent that the trial court rested its conclusion that Simon had reasonable suspicion to stop defendant on the officer safety doctrine, it erred. Although the doctrine permits an officer to search a lawfully stopped defendant for weapons, it cannot "justify the *initiation* of [a] stop." *State v. Peterson*, 164 Or App 406, 409, 991 P2d 1104 (1999) (emphasis in original).

[4] In evaluating whether Simon possessed reasonable suspicion, we are mindful that the standard is less demanding than that for probable cause to arrest or for proof sufficient to support a conviction. *See Cibula v. DMV*, 202 Or App 551, 555-56, 123 P3d 382 (2005), *rev den*, 340 Or 308 (2006) ("The reasonable suspicion standard is intended to be less than the standard for probable cause. The officer must act under a belief that is reasonable under the totality of the circumstances existing at the time of the stop, and that belief must be objectively based on observable facts. Thus, if an officer is able to point to specific and articulable facts which give rise to the inference that criminal activity is afoot, the officer has reasonable suspicion." (Internal citations omitted.)); *compare* ORS 131.005 (11) (" 'Probable cause' means

ORS 166.240 provides, in part, that "any person who carries concealed upon the person * * * [an] instrument by the use of which injury could be inflicted upon the person or property of any other person, commits a Class B misdemeanor." Defendant contends that Simon lacked reasonable suspicion to believe that the sword was concealed because he could identify it as a sword and because defendant openly acknowledged what it was when asked. Despite the fact that Simon could see the handle and identify the object as a sword, the state argues that the weapon was nevertheless "concealed." In the state's view, a weapon can be "concealed" even though part of it is visible.

No Oregon statute defines what it means to carry a weapon "concealed upon the person." The plain and ordinary meaning of "conceal" is "to prevent disclosure or recognition of." *Webster's Third New Int'l Dictionary* 469 (unabridged ed 2002). Thus, the object need not be completely hidden from view.

Even if a weapon is recognizable, probable cause or reasonable suspicion that a person has violated a concealed weapons statute may arise if the officer observes evidence of an unsuccessful attempt "to prevent disclosure or recognition" of the weapon. *Webster's* at 469. In *State v. Riley*, 240 Or 521, 402 P2d 741 (1965), an officer had probable cause to believe a driver violated ORS 166.250, which prohibits carrying a concealed firearm in a vehicle without a license, after seeing the butt of the gun "in a place indicating an effort to conceal it, coupled with the fact that defendant appeared to be in the act of concealment just before he was stopped." *Id.* at 522-24; *see also State v. Fisher*, 100 Or App 149, 785 P2d 369, *rev den*, 309 Or 522 (1990) (evidence that the defendant put "something" on the floor that he later admitted was a gun, was sufficient to support a conviction under ORS

that there is a substantial objective basis for believing that *more likely than not* an offense has been committed and a person to be arrested has committed it." (Emphasis added.)), *with* ORS 131.605(5) (" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts."). Thus, we limit our inquiry to whether Simon's belief that defendant was engaging in criminal activity was objectively reasonable based on the observable fact of the sword handle sticking out between defendant's back and backpack.

166.250, which contains similar language concerning concealment). Despite the fact that the officer in *Riley* could see a portion of the gun and recognize it as a gun, he had probable cause to believe the defendant had intended to conceal the fact that he possessed it based on the defendant's furtive movements and the gun's location at the time of discovery. Accordingly, a weapon may be "concealed" within the meaning of the statute even if it is recognizable for what it is if there is also evidence of an imperfect attempt to prevent it from being discovered or recognized. *Cf. State v. Johnson*, 96 Or App 166, 777 P2d 426 (1989) (a knife worn in a sheath on a belt is not concealed, even if it is partially covered by a jacket (citing ORS 166.250(3) (1989) ("Firearms carried openly in belt holsters are not concealed."))).

■ In light of the plain meaning of the statutory language and prior cases interpreting similar statutes, we conclude that a person violates ORS 166.240 by carrying on his person a weapon that is either not readily identifiable as a weapon or by attempting to obscure the fact that he is carrying a weapon on his person.

Here, Simon could readily identify the sword as a sword based on the visible portion of it. The state did not contend to the trial court that defendant had unsuccessfully attempted to hide the sword, and there is no evidence in the record to support that contention.[5] There is also no evidence in the record to support a finding that Simon believed that the sword was concealed when he directed Simon to pull over; instead, Simon testified that he "could see the—that first [sword] on top," and he motioned for defendant to pull over because he was carrying what Simon identified as a "dangerous weapon." The state does not argue that Simon was only able to identify the object as a sword based on his training and experience, and the trial court made no findings that

---

[5] Because the record lacks such evidence, to the extent that the trial court implicitly found that defendant intended to conceal the first sword, we are not bound by that finding. *See State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) (suppression court's findings of historical fact are binding on appellate courts if there is constitutionally sufficient evidence to support them); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) ("If findings are not made on all such facts, *and there is evidence from which such facts could be decided more than one way*, we will presume that the facts were decided in a manner consistent with the ultimate conclusion * * * made by the trial court or jury." (Emphasis added.)).

would support such a contention. Moreover, the record is devoid of evidence that Simon was able to identify the object as a "sword or something similar" only because of his specialized knowledge. *Cf. State v. Goodman*, 328 Or 318, 328, 975 P2d 458 (1999) ("Facts derived from training and experience may contribute that necessary factual nexus in a determination of probable cause."); *State v. McKinney*, 174 Or App 47, 53-54, 23 P3d 386 (2001), *rev den*, 333 Or 206 (2002) (applying principle to evaluate whether an officer possessed reasonable suspicion).

Because Simon lacked reasonable suspicion to believe that defendant was carrying a *concealed* weapon at the time that he motioned for defendant to pull over, he unlawfully stopped defendant, and the trial court erred in failing to suppress evidence of the second sword.

Reversed and remanded.