Argued and submitted September 28, 2010, reversed and remanded
August 3, 2011

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ALEXANDER THOMAS HEBRARD,
*Defendant-Appellant.*

Multnomah County Circuit Court
080632920; A140364

260 P3d 759

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Harry B. Wilson, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals his convictions for unauthorized use of a vehicle, ORS 164.135(1)(a), possession of a stolen vehicle, ORS 819.300, and giving false information to a peace officer, ORS 162.385. Defendant asserts that the trial court erred in denying his motion to suppress evidence. Defendant contends that the officer had no reasonable suspicion to stop defendant, and his subsequent arrest was not supported by probable cause. The state asserts that the trial court correctly denied defendant's motion to suppress, because the officer lawfully stopped and arrested defendant. Alternatively, the state contends that defendant's arrest on an outstanding warrant purges the taint of any prior police illegality. We agree with defendant that the officer did not have probable cause to arrest defendant, and that the trial court erred in denying his motion to suppress. Accordingly, we reverse and remand.

On review of the denial of a motion to suppress, we review the trial court's findings for evidence in the record and then determine whether the court correctly applied legal principles to those findings. *State v. Lambert*, 134 Or App 148, 151, 894 P2d 1189 (1995).

Late one afternoon in June 2008, a police officer was following the signal of a LoJack on a stolen truck, a gray Ford pickup with a blue canopy.[1] The officer saw a truck matching that description parked in an unpaved driveway on the north side of a house, close to the front of the garage. A paved driveway led to the garage and the unpaved driveway split off of the paved driveway to the side of the garage. There were four people, including defendant, standing near another car that was parked on the paved driveway within 20 to 30 feet of the truck. A skid mark on the street led to where the truck was parked. The truck was large enough for all four of the people to sit in it. The officer thought that it was likely that all four of the people in the driveway were connected with the stolen truck. The officer told the four people to put their hands in

---

[1] A LoJack is a device concealed in a car that allows the police to track the car if it is stolen.

the air, which they did, and the officer waited for more officers to arrive.

When the other officers arrived, the officers put all four of the people in handcuffs. As an officer handcuffed defendant, the officer noticed that defendant had dropped a key fob on the ground. Defendant attempted to cover the key fob with his foot and then tried to kick it under a car. The officer picked up the key fob, then conducted a patdown for weapons and obtained defendant's wallet. The officer did not find any weapons on defendant. There was an Infinity SUV in front of the house that had also been reported as stolen and had license plates that belonged to a different car. The key fob that defendant had dropped had an Infinity logo on it, and, when the officer pressed a button on the key fob, the lights on the Infinity turned on.

The officer asked defendant for his name and date of birth. The officer thought that defendant was lying about his name and age, based on the facts that defendant misspelled his name and that defendant looked older than 18. When the officer ran the name that defendant had given him, it came back "unable to locate." The officer found a Social Security card in defendant's wallet with a different name on it, and when he ran that name, he discovered that the person had an outstanding arrest warrant for a "parole" violation. At that point, the officer gave defendant *Miranda* warnings. The officer then asked defendant a number of questions about the truck. Defendant responded to some of the questions, but, in response to one, he stated, "I know what you want me to say. This isn't my first rodeo; check my record."

Defendant was charged with unauthorized use of a motor vehicle (Count 1), possession of a stolen motor vehicle (Count 2), identity theft (Count 3), giving false information to a peace officer (Count 4), and unlawful entry into a motor vehicle (Count 5).

Defendant filed a motion to suppress all evidence obtained by the officers as a result of the stop and arrest. Among other things, defendant argued that (1) the officer lacked reasonable suspicion to stop him, (2) the officer lacked probable cause to arrest him, and (3) the existence of a warrant did not purge the taint of the prior police illegality. At

the hearing on the motion to suppress, the state argued that the officer had probable cause to search defendant's wallet based on the evidence that defendant had lied to the police officer about his name.

The court found that the officer stopped defendant and had reasonable suspicion that the four individuals in the driveway had committed a crime. The court found that defendant's statements to the officer about his name and date of birth gave the officer probable cause to arrest him for giving false information, and that the officer's subsequent search of defendant's wallet was a search incident to arrest. The court found that defendant's "rodeo" statement was an indication that he did not want to answer that particular question, not an invocation of his right to silence. Consequently, the trial court denied the motion to suppress.

In the bench trial that followed, the court incorporated all the admissible evidence from the motion hearing and heard further testimony. The court found defendant guilty of unauthorized use of a motor vehicle (Count 1), possession of a stolen motor vehicle (Count 2), and giving false information to a peace officer (Count 4), and not guilty of identity theft (Count 3). The court granted defendant's motion for a judgment of acquittal on the charge of unlawful entry into a motor vehicle (Count 5). Defendant appeals, assigning error to the trial court's denial of his motion to suppress. The parties renew the arguments they made to the trial court.

The first question we must resolve is when the officer arrested defendant. Defendant contends that he was under arrest when the officer put him in handcuffs, because that determines the standard by which the seizure of his person must be justified. If defendant was arrested before the evidence at issue was discovered, the seizure must have been justified by probable cause. If he had not yet been arrested, it need only have been justified by reasonable suspicion. The state asserts that putting defendant in handcuffs was a stop and the arrest occurred later, based on probable cause that defendant had provided false information about his identity. If the arrest was unlawful, evidence the officers discovered because of the unlawful arrest is subject to suppression

under Article I, section 9, of the Oregon Constitution.[2] *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). The state bears the burden of establishing the validity of a warrantless search or seizure. *State v. Rudder*, 219 Or App 430, 435, 183 P3d 212 (2008), *aff'd*, 347 Or 14, 217 P3d 1064 (2009). To determine when the stop escalated to an arrest, we make "a fact-specific inquiry into the totality of the circumstances of the particular case." *State v. Ehly*, 317 Or 66, 78, 854 P2d 421 (1993).

"A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place." ORS 131.605(6). During a stop, an officer may "use the degree of force reasonably necessary to make the stop and ensure the safety of the peace officer, the person stopped or other persons who are present." ORS 131.615(5). "However, the duration of the detention or intensity of the officer's actions can convert a stop into an arrest under Article I, section 9." *State v. Medinger*, 235 Or App 88, 93, 230 P3d 76 (2010). An officer confronted with safety concerns may handcuff a person without converting the stop into an arrest, but the stop is converted into an arrest if the officer continues to use force to restrain the person after the officer's safety concerns have dissipated. *Id.*; *State v. Morgan*, 106 Or App 138, 141-42, 806 P2d 713, *rev den*, 312 Or 235 (1991).

Here, the officer who arrived first testified that he encountered a safety concern because there were four suspects and he did not know if there were any more people in the house or in the stolen truck. The officer further explained that he was trained to handle that kind of situation by asking the suspects to show him their hands and stay where he could see them, and to call for backup. The officer followed his training and the four people in the driveway were cooperative. One of the officers who provided backup testified that the four people in the driveway "were being fairly cooperative at the time, and not posing a threat[.]" Under the totality of the circumstances, we conclude that the officer converted the stop into an arrest when he handcuffed defendant. At trial,

---

[2] Article I, section 9, of the Oregon Constitution provides, in pertinent part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

the state argued that handcuffing defendant was a reasonable amount of force to ensure officer safety. However, the state does not renew that argument on appeal. Regardless, we conclude that, although there may have been officer safety concerns when there was a lone officer and four suspects, those concerns were no longer present once the other officers arrived. Because officer safety concerns did not justify the handcuffing, we conclude that the handcuffing converted the stop into an arrest of defendant.

We next consider whether the officer had probable cause to arrest defendant. The state contends that, even if the officer placed defendant under arrest by handcuffing him, the arrest and subsequent search were lawful because the officer had probable cause to believe that defendant had committed the crime of unlawful use of a motor vehicle. "In the context of justification to arrest a person, ' "[p]robable cause" means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it.' " *State v. Foster*, 233 Or App 135, 141, 225 P3d 830 (2010), *aff'd*, 350 Or 161, 252 P3d 292 (2011) (quoting ORS 131.005(11)).

The state argues that there was probable cause to believe that defendant had committed unlawful use of a vehicle.[3] The state relies on the following evidence: (1) the officer knew that the truck had been stolen and someone other than its owner had been driving it; (2) the officer saw the stolen truck in the driveway; (3) the officer knew that the truck had been moving shortly before he arrived based on the LoJack signal and the skid marks leading to the truck; (4) four individuals, including defendant, were within 20 to 30 feet of the truck; and (5) the truck was large enough to seat all four individuals. In addition, the officer who arrested defendant testified that, given the time and the circumstances, "[t]he assumption was that [all four people at the scene] were involved, or at least had knowledge."

Essentially, the state argues that defendant's proximity to the stolen truck establishes probable cause that

---

[3] A person commits unlawful use of a vehicle when the person "takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner[.]" ORS 164.135(1)(a).

defendant used the truck unlawfully. However, we do not agree with the state's proposition that defendant's mere proximity to the stolen vehicle was sufficient to give the officer probable cause to believe that defendant had committed unlawful use of a vehicle. The officer subjectively believed that one of the individuals standing on the driveway had been driving the stolen truck, but he had no specific reason to believe that defendant had been in the truck. Nor did the officer have any reason to believe that any one of the four people had been in the truck. The officer assumed that, because four people could fit in the truck, four people were in the truck. That assumption may support reasonable suspicion, but not probable cause. In addition, the officer stated that he thought that either all four people were involved *or* that they had knowledge about the crime. Thus, the officer lacked probable cause because even though he had a substantial objective basis for believing that *someone* had committed the offense of unlawful use of a motor vehicle, it was not more likely than not that *defendant* had committed the crime. Because the officer's subjective belief that defendant had committed the crime was not objectively reasonable under the totality of the circumstances, the arrest was unlawful and the court erred in denying defendant's motion to suppress evidence the officers found as a result of the unlawful arrest.

In the alternative, the state argues that defendant's outstanding arrest warrant purged the taint of the prior police illegality. We considered and rejected a similar argument in *State v. Taylor*, 151 Or App 687, 950 P2d 930 (1997), *rev den*, 327 Or 432 (1998). In *Taylor*, an officer stopped a car for a traffic infraction and, after obtaining the identification of the driver and the passengers, asked the defendant to step out of the car, frisked her, and asked to search her purse. Upon searching the defendant's purse, the officer found a controlled substance. *Id.* at 689. Relying on *State v. Dempster*, 248 Or 404, 434 P2d 746 (1967), and related cases,[4] the state argued that, even if the officer unlawfully obtained the defendant's consent to search, the evidence obtained as a result of that consent was admissible because the existence of an outstanding warrant for the defendant's

---

[4] The state relies on the same line of cases here.

arrest "cleansed that evidence of any taint of the prior unlawful conduct." *Taylor*, 151 Or App at 691-92. In *Taylor*, we disagreed with the state's position, because "[i]n all of the cases cited by the state, the search at issue was conducted *after* the discovery of an outstanding warrant and the arrest of the defendant pursuant to that warrant." *Id.* at 692 (emphasis in original). We concluded that, because the search took place before the officer had any reason to believe that he had cause to arrest the defendant, "[i]t was not a search incident to a lawful arrest but, rather, an unlawful search that preceded a lawful arrest." *Id.* Similarly here, the officer searched defendant before the arrest on the outstanding warrant. The search here was an unlawful search incident to an unlawful arrest before the outstanding warrant was discovered.

Finally, the state contends that the court properly denied defendant's motion to suppress the key fob because the officer did not obtain the key fob by the exploitation of illegal police conduct. The state argues that, because defendant "voluntarily and unilaterally dropped, and then kicked" the key fob, that sufficiently attenuated the discovery of that evidence from the prior illegality under *State v. Crandall*, 340 Or 645, 652, 136 P3d 30 (2006). The state's reliance on *Crandall* is misplaced. In *Crandall*, after an officer directed the defendant to "stop" and "come here," the defendant put a clear plastic baggie containing a controlled substance under a car in the parking lot. *Id.* at 647. Here, the officer testified,

> "As I handcuffed him, I noticed that he had dropped a key fob onto the ground. I didn't think much of it at the time because we ask people to show us their hands, and in order to do that they open their hands and if something's in the hand they drop it. So the—the item hit the ground."

The officer's testimony establishes that defendant dropped the key fob while he was being handcuffed; it is implicit in the officer's testimony that he noticed the key fob hit the ground "[a]s [he] handcuffed him." *See State v. Morton*, 326 Or 466, 470-71, 953 P2d 374 (1998) (holding that the defendant was entitled to challenge, under Article I, section 9, the police seizure of a container that fell from defendant's jacket during an arrest, and the seizure could not be separated from the unlawful arrest). Accordingly, we conclude that there was a

causal connection between the illegal arrest and the subsequent discovery of the evidence, and the trial court erred in denying defendant's motion to suppress the key fob along with the rest of the evidence the officers discovered after his illegal arrest.

Reversed and remanded.