Argued and submitted June 28, reversed and remanded November 9, 2011, petition for review denied March 22, 2012 (351 Or 675)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JAKE LAREDO RAYBURN,
*Defendant-Respondent.*

Multnomah County Circuit Court
090531997; A144049

266 P3d 156

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Zachary L. Mazer, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

The state appeals an order suppressing incriminating statements and other evidence obtained after defendant was arrested for unauthorized use of a vehicle. ORS 164.135(1)(a). The court agreed with defendant that the arrest was unlawful because one element of that crime is knowledge that the use is, in fact, unauthorized, and the arresting officers did not have probable cause to believe that defendant had that knowledge. We agree with the state that defendant's arrest was lawful and conclude that the trial court erred in suppressing the statement and evidence. We therefore reverse and remand.

The following facts are undisputed. Portland police officers Berne and Laws received a dispatch report that a caller had observed a red Honda Civic driving recklessly in the area of 112th Street and Division, weaving and cutting in and out of traffic, and that its occupants were observed throwing objects from the vehicle. Dispatch also noted that the Honda's license plate number matched that of a car stolen in Gresham. A few minutes later, Berne saw a group of men standing around a car parked down a long driveway off of 112th Street. Laws turned the patrol car around and pulled into the driveway. By that time, the men had gotten into the car, a red Honda Civic, and were approaching the officers head-on. Laws confirmed that the license plate matched the stolen license plate provided by dispatch.

Outnumbered by the four occupants in the car, Berne and Laws conducted a "high risk stop." The officers drew their weapons and ordered the occupants to stop and raise their hands, and for the driver to shut off the engine and remove the key from the ignition. The occupants complied, with one exception: The driver gestured that he was unable to remove the key from the ignition. Berne testified that, based on his experience, stolen vehicles are often started with a shaved key or screwdriver that can be impossible or difficult to remove.

The officers then called for back-up and removed the passengers one at a time. Defendant, the front passenger,

was removed first, handcuffed, and secured in a patrol vehicle. After taking the driver and other passengers into custody, Berne and Laws confirmed that the car was stolen. After also smelling crack cocaine, they conducted an inventory search and found a used crack pipe in the glove box. Berne "tried to remove the key from the ignition" and "wasn't able to." After interviewing the driver, Berne advised defendant of his *Miranda* rights, interviewed him, and placed him under arrest. Defendant was charged with unauthorized use of a vehicle, possession of a stolen motor vehicle, and misdemeanor driving while suspended or revoked.[1] He filed a motion to suppress, contending that, although the officers had reasonable suspicion to stop him, they did not have probable cause for his arrest, a more severe limitation on his liberty. *See State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991) (describing variety of police-citizen encounters; stop must be justified by reasonable suspicion; arrest must be justified by probable cause). The trial court granted the motion. The court concluded that, although the officers had the subjective belief that defendant, by virtue of being a passenger, had committed the crimes of unauthorized use of a vehicle and possession of a stolen vehicle, the officers lacked objective probable cause at the time of the encounter to arrest defendant:

> "[J]ust by virtue of being a passenger and by virtue of the fact that the driver indicated that he couldn't take the key out, those are the only factors indicating towards defendant's guilt, and that those factors alone, without more, don't allow this court objectively to draw the inference that it's more likely than not under those circumstances that the defendant committed those crimes."

The state's appeal followed. ORS 138.060(1)(c) (authorizing state's appeal of order granting motion to suppress).

ORS 164.135(1) provides that "[a] person commits the crime of unauthorized use of a vehicle when: (a) The person takes, operates, exercises control over, *rides in* or otherwise uses another's vehicle * * * without consent of the owner[.]" (Emphasis added.) To convict a person under ORS

---

[1] The record does not reveal why he was not charged with any crimes related to the crack pipe.

164.135(1) for riding in a stolen vehicle, the state must prove that the person knew that the vehicle was stolen at the time he or she was a passenger. *State ex rel Juv. Dept. v. Mitchell*, 142 Or App 40, 43, 920 P2d 1103 (1996). Such knowledge can be proven by circumstantial evidence. *Id.*

Our task is to determine if, under the totality of the circumstances here, there was probable cause to support defendant's arrest. We review the facts on which that determination is made for any evidence, and the determination itself as a question of law. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). A police officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed a felony. ORS 133.310(1)(a). "Probable cause" to arrest is defined as a substantial objective basis for believing that, more likely than not, an offense has been committed and that the person to be arrested has committed it. ORS 131.005(11).

Probable cause has two aspects: "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). The subjective component of the probable cause inquiry is satisfied if an officer believes that he or she has lawful authority to restrain the individual's liberty. *Vasquez-Villagomez*, 346 Or at 23. The state must also establish that the facts objectively are sufficient to establish probable cause. *Id.* To determine whether the state has established that the facts are objectively reasonable, we examine the totality of the circumstances, including the officer's training and experience. *Id.*

The state and defendant agree that defendant was arrested when he was removed from the car and handcuffed.[2] The state argues that there was probable cause to arrest defendant at that time based on several factors: a reliable dispatch report that the car in which defendant was a passenger was stolen; a citizen's report that the car had been driven recklessly and its inhabitants were seen throwing

---

[2] Defendant does not contend that he was arrested earlier in the encounter, for example when the officers first drew their weapons and ordered the vehicle's occupants to raise their hands, and we do not address that issue.

objects from the windows; defendant's and his companions' actions in attempting to leave the driveway where the officers found them; and the existence of the "shaved key."

Defendant contends, and the trial court concluded, that the officers lacked objective probable cause to arrest defendant, relying on our analysis in *State v. Koroteev*, 222 Or App 596, 194 P3d 842 (2008). In that case, an officer responded to a dispatch report that a caller had reported a theft in progress from a vehicle in a nearby parking lot. *Id.* at 598. The officer encountered a group of people pointing in the direction of a vehicle with the defendant under the hood; he was manipulating cables in the engine compartment. *Id.* Though the officer believed that he had probable cause to arrest the defendant for committing attempted theft, we held that the officer's belief was not objectively reasonable. *Id.* at 598-601. The officer's observations at the scene did not corroborate the criminality of the defendant's conduct and failed to add anything to the determination of whether the defendant was engaged in criminal behavior. *Id.* at 601. Further, the officer did not know at the time of the defendant's arrest that the caller was the owner of the vehicle and the apparent victim of the attempted theft. *Id.* at 601-02. Thus, we held that the arrest was not supported by probable cause. *Id.* at 602.

Here, although the officers similarly relied on a dispatch report of a stolen vehicle, the officers' observations corroborated the criminality of defendant's conduct. Berne's and Laws's observations at the scene exactly matched the dispatch report of the car and its location. Dispatch, not an unknown caller, had reported the car as stolen; Berne and Laws confirmed with dispatch that the license number of the car matched that of a stolen car before conducting the stop. Further, the driver was unable to remove the key from the ignition, indicating to Berne that the car was stolen. Clearly, the officers had probable cause to believe that defendant was in a stolen car. They also had first-hand knowledge that defendant was riding in the car at the time that they encountered him. And they knew that, very shortly before the encounter, the stolen car was being driven recklessly and its occupants were throwing objects out of it.

Defendant, understandably, focuses on what the officers did *not* know. There is no evidence that defendant was riding in the car when the citizen reported that it was being driven recklessly and littering; that defendant and his companions, at the time they were stopped, were attempting to flee from the police officers or had even seen the officers before beginning to drive away; or that defendant had observed the "shaved key."

We strongly suspect that the totality of the circumstances at the time that the officers arrested defendant are insufficient to establish beyond a reasonable doubt that defendant knew the car was stolen. In *Mitchell*, 142 Or App at 42-44, for example, we held that there was insufficient proof to establish the youth's knowledge that the vehicle he was riding in was stolen, despite the fact that the vehicle's door locks were punched and the ignition was damaged, because there was no evidence that the youth perceived that damage. Likewise, in *State v. Shuneson*, 132 Or App 283, 287, 888 P2d 90 (1995), we held that a passenger's knowledge that the vehicle she was riding in was stolen could not be inferred beyond a reasonable doubt merely because the vehicle was being driven recklessly and the defendant attempted to flee from the police. *See also State v. Bell*, 220 Or App 266, 271, 185 P3d 541 (2008) (knowledge that a vehicle is stolen cannot be inferred from the fact that the person from whom the defendant "rented" the vehicle was a stranger who approached him on the street and offered to rent him the vehicle for $50). *Cf. State ex rel Juv. Dept. v. Hal*, 168 Or App 76, 78-79, 7 P3d 535 (2000) (knowledge inferable from fact that person who rented the vehicle to the defendant was a crack addict, interior of vehicle was stripped, and wires hung from where stereo belonged).

Proof beyond a reasonable doubt, however, is not the appropriate standard here. To establish probable cause, as opposed to guilt, the state needs to prove only that, *more likely than not*, defendant had the requisite mental state. ORS 131.005(11) (emphasis added). That is a significantly less rigorous standard. " '[T]here is a vast difference between proof of probable cause and proof of guilt * * *.' " *State v. Goodman*, 328 Or 318, 326, 975 P2d 458 (1999) (quoting *State v. Tacker*, 241 Or 597, 600, 407 P2d 851 (1965)). Consistent

with the facts as the officers knew them when they arrested defendant—four men are first seen standing around a stolen vehicle that has just been reported as being driven recklessly by a group of people, and then seen again driving away from where they were first seen—defendant's presence in the stolen car could have been explained under a variety of scenarios that did not involve his knowledge that it was stolen. None of them, however, is more likely than the scenario that the officers believed to have occurred: defendant and his friends had been joy-riding in a car that they all knew was stolen.

Reversed and remanded.