Argued and submitted June 28, reversed and remanded November 23, 2011,
petition for review denied March 22, 2012 (351 Or 675)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

RUSTAL AYVAZOV,
*Defendant-Respondent.*

Multnomah County Circuit Court
090130110; A143783

267 P3d 196

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for appellant. On the briefs were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Christina M. Hutchins, Senior Assistant Attorney General.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

As in *State v. Rayburn*, 246 Or App 486, 266 P3d 156 (2011), the state appeals from an order suppressing incriminating statements and other evidence obtained after defendant was arrested for unauthorized use of a vehicle. ORS 164.135(1)(a). The trial court agreed with defendant that the arrest was unlawful because one element of that crime is knowledge that the use is, in fact, unauthorized, and the arresting officers did not have probable cause to believe that defendant had such knowledge. In a cross-assignment of error, defendant contends that the evidence was correctly suppressed because he did not understand the *Miranda* warnings that police gave him before eliciting the incriminating statements. We reverse and remand.

The following facts are undisputed. While on patrol in a police car, officers Wuthrich and Sparling of the Portland Police Bureau received a report that a man driving a green Honda Accord was chasing a woman who was on foot in a southeast Portland neighborhood. Shortly thereafter, Wuthrich saw a green Honda parked in a residential driveway. He noted the license plate number, ran it through the police databases, and learned that the Honda had been reported as stolen. The officers turned around, pulled into the driveway behind the Honda, turned on their patrol car's lights, and then radioed for help to perform what they characterized as a "felony, high-risk stop." They waited in their patrol car until three or four other officers arrived. Wuthrich then drew his weapon and loudly ordered the occupants of the car to get out with hands up and to walk backwards toward the officers. Both the driver, a woman, and a front seat passenger, defendant, were cooperative. The officers immediately handcuffed them and placed them in separate patrol cars. They then returned to the Honda in order to get its VIN number. At that point, the officers saw that there was no stereo and that the ignition had been severely damaged. They confirmed that the VIN number on the Honda matched that of the vehicle that was reported stolen. Once the officers received that confirmation, they initiated interviews with the driver and defendant to discuss the situation with them.

Sparling interviewed defendant. Before he began, he gave defendant *Miranda* warnings and asked him if he understood them. Defendant replied, "I kind of understand them." Sparling felt comfortable with continuing the interview. He and defendant carried on an extended conversation in English. Defendant responded appropriately and showed no signs of noncomprehension; defendant did most of the speaking and, in doing so, made the incriminating statements that are the subject of this appeal. After concluding the interview, Sparling arrested defendant for unlawful use of a motor vehicle, unlawful entry into a motor vehicle, and possession of a stolen motor vehicle.

Defendant moved to suppress his statements to the police and any evidence resulting from them, including, apparently, his acknowledgement that he knew the car was stolen. He argued that, when the officers, with drawn guns, ordered him out of the car with his hands up and then handcuffed him and locked him in the back of the patrol car, they effected an arrest, and that, at the time, they did not have probable cause to do so. He also argued that he never waived his *Miranda* rights because he did not fully understand them. The state responded that, because defendant and the other occupant posed a safety threat to the officers, handcuffing him and locking him in the police car was not an "arrest" but a mere "stop," justified by reasonable suspicion. In the alternative, the state argued that, even if the confrontation did amount to an arrest, it was lawful because the officers had probable cause to believe that defendant knew the car was stolen. The court agreed with defendant that he was unlawfully arrested without probable cause and granted his motion. The court also determined that defendant understood the *Miranda* warnings and, for that reason, his continued conversation with Sparling effected a valid waiver. The state appeals, assigning error to the probable cause determination; defendant cross-assigns error to the court's ruling regarding *Miranda* warnings.

We begin with the state's assignment of error. According to the state, the officers who detained defendant did not need probable cause to believe that criminal activity was afoot and that defendant was involved in it, because that

level of certainty is necessary to justify only an arrest; defendant, the state contends, was not arrested, despite the fact that he was ordered at gunpoint to get out of a car, handcuffed, and locked in a police cruiser. Rather, according to the state, he was merely stopped, and a stop can be justified by reasonable suspicion, a lower level of certainty that was obviously present under the circumstances of this case. *See State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991) (describing variety of police-citizen encounters; stop must be justified by reasonable suspicion; arrest must be justified by probable cause). The state acknowledges that, in most situations, a suspect is arrested once he or she is handcuffed. *E.g., State v. Quinn*, 112 Or App 608, 612, 831 P2d 48, *rev den*, 313 Or 627 (1992). However, the state points to several cases in which this court has held that the usual rule does not apply if handcuffing the suspect is necessary to ensure officer safety. *E.g., State v. Medinger*, 235 Or App 88, 93, 230 P3d 76 (2010); *State v. Werowinski*, 179 Or App 522, 528 n 3, 40 P3d 545, *rev den*, 334 Or 632 (2002); *State v. Morgan*, 106 Or App 138, 141-42, 806 P2d 713, *rev den*, 312 Or 235 (1991). In such situations, an officer "may handcuff a person without converting the stop into an arrest, but the stop is converted into an arrest if the officer continues to use force to restrain the person after the officer's safety concerns have dissipated." *State v. Hebrard*, 244 Or App 593, 598, 260 P3d 759 (2011).

Defendant disputes both the analytic framework and its application. He contends that an arrest is defined to include "plac[ing] a person under actual or constructive restraint[,]" ORS 133.005(1); *Holmes*, 311 Or at 407, and that no plausible judicial gloss on that statute can lead to the conclusion that a person who has been handcuffed at gunpoint and locked into a police car is not under actual restraint. According to defendant, the proper analytic framework requires acknowledging that a person who has been handcuffed is arrested as a matter of law, but that officer safety is an exception to the requirement that a warrantless arrest must be based on probable cause. Under either framework, defendant argues, the "stop" or "arrest" here was not justified, because, under the circumstances, there were no valid officer safety concerns once backup arrived and defendant was out of the car. At that point, all officer safety concerns

could have been addressed by performing a patdown to determine if defendant was armed—which, apparently, he was not.

Defendant's critique of the court's analytical method is persuasive, and his contention that officer safety concerns dissipated before he was handcuffed may be correct. We need not decide that issue, however, because even if defendant's arrest was not justified by officer safety concerns, it was nonetheless justified by probable cause.

"ORS 164.135(1) provides that '[a] person commits the crime of unauthorized use of a vehicle when: (a) The person takes, operates, exercises control over, *rides in* or otherwise uses another's vehicle * * * without consent of the owner[.]' (Emphasis added.) To convict a person under ORS 164.135(1) for riding in a stolen vehicle, the state must prove that the person knew that the vehicle was stolen at the time he or she was a passenger. *State ex rel Juv. Dept. v. Mitchell*, 142 Or App 40, 43, 920 P2d 1103 (1996). Such knowledge can be proven by circumstantial evidence. *Id.*

"Our task is to determine if, under the totality of the circumstances here, there was probable cause to support defendant's arrest. We review the facts on which that determination is made for any evidence, and the determination itself as a question of law. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). A police officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed a felony. ORS 133.310(1)(a). 'Probable cause' to arrest is defined as a substantial objective basis for believing that, more likely than not, an offense has been committed and that the person to be arrested has committed it. ORS 131.005(11).

"Probable cause has two aspects: 'An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances.' *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). The subjective component of the probable cause inquiry is satisfied if an officer believes that he or she has lawful authority to restrain the individual's liberty. *Vasquez-Villagomez*, 346 Or at 23. The state must also establish that the facts objectively are sufficient to establish probable cause. *Id.* To determine whether the state has established that the facts

are objectively reasonable, we examine the totality of the circumstances, including the officer's training and experience. *Id.*"

*Rayburn*, 246 Or App at 489-90. The facts that determine whether there is objective probable cause are the facts known by the arresting officer at the time of the arrest. *State v. Ratliff*, 82 Or App 479, 483, 728 P2d 896 (1986), *aff'd*, 304 Or 254, 744 P2d 247 (1987). The probable cause that is necessary to justify an arrest is a significantly less rigorous standard than the "proof beyond a reasonable doubt" that is necessary to justify a conviction. *Rayburn*, 246 Or App at 492.

The relevant facts in this case are few, but they are sufficient. When they encountered defendant, the officers knew that a green Honda with the license plate of the car defendant was in had been stolen and that it had very recently been seen near the site of the arrest. They also knew that, when it was seen, it was being *driven by a man* who appeared to be attempting to run down a woman. From those facts, it was objectively reasonable for them to believe that the car that they saw in the driveway was stolen *and that defendant had recently been seen driving it*. Thus, although defendant was a passenger when the car was stopped, it was reasonably inferable that he had, in the very recent past, been its driver, and that he had been engaged in suspicious conduct. While those facts might not prove beyond a reasonable doubt that defendant knew the car was stolen, they are sufficient to establish probable cause.[1]

Defendant's cross-assignment of error rests on the assertion that "he did not knowingly and voluntarily waive his *Miranda* rights, because he could not understand the *Miranda* warnings due to a language barrier." The court, in

---

[1] We need not, and do not, address the argument that, even if the arrest was unlawful, the chain of causation between that arrest and defendant's incriminating statements was broken (or at least attenuated) when the police administered *Miranda* warnings. Further, we need not and do not address the argument that, by the time the officer began to interrogate defendant, the officer knew that the Honda's ignition was damaged—a fact that, according to the state, greatly increased the likelihood that the car's occupants knew that it was stolen. The state raised that argument only after the court had ruled on defendant's motion to suppress. The prosecutor agreed with the court that the argument was properly characterized as a motion for reconsideration. The court denied the motion and the state does not assign error to that ruling.

ruling in favor of the state on the *Miranda* issue, found as fact that defendant "could readily understand or communicate the English language[.]" There is evidence to support that finding, and we are therefore bound by it. We therefore reject defendant's cross-assignment of error.

Reversed and remanded.