Submitted November 26, 2014, affirmed January 7, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LINDA JEANINE GIBSON,
*Defendant-Appellant.*

Multnomah County Circuit Court
121034690; A153581

342 P3d 168

Peter Gartlan, Chief Defender, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Garrett, Judge, and Edmonds, Senior Judge.

GARRETT, J.

## GARRETT, J.

Defendant was convicted of two counts of unauthorized use of a vehicle (UUV), ORS 164.135, one count of identity theft, ORS 165.800, and one count of possession of methamphetamine, ORS 475.894. On appeal, defendant assigns error to the trial court's denial of her motion to suppress "all oral and physical evidence obtained as a result of the stops and arrests of the defendant by the Portland Police Bureau." Defendant was arrested twice, once on September 9, 2012, and again on October 17, 2012. She contends that on both occasions police lacked probable cause to arrest her, and that the resulting searches were consequently unlawful. For the reasons that follow, we conclude that police in both instances had probable cause to arrest defendant for the crime of UUV. Accordingly, the trial court did not err in denying defendant's motion to suppress, and we affirm the judgment.

We begin by stating the law applicable to both arrests, which occurred in the absence of a warrant. A warrantless arrest is permissible under Article I, section 9, of the Oregon Constitution if the arresting officer has probable cause to believe that the person has committed a crime. *State v. Mace*, 67 Or App 753, 756-57, 681 P2d 140, *rev den*, 297 Or 339 (1984); ORS 133.310(1). Probable cause has two aspects: (1) the officer must subjectively believe that a crime has been committed, and (2) that belief must be objectively reasonable under the totality of the circumstances. *State v. Rayburn*, 246 Or App 486, 490, 266 P3d 156 (2011), *rev den*, 351 Or 675 (2012). "The facts that determine whether there is objective probable cause are the facts known by the arresting officer at the time of the arrest." *State v. Ratliff*, 82 Or App 479, 483, 728 P2d 896 (1986), *aff'd*, 304 Or 254, 744 P2d 247 (1987).

As relevant here, "[a] person commits the crime of unauthorized use of a vehicle when * * * [t]he person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner[.]" ORS 164.135. That person must know that he or she does not have the owner's consent. *State v. Jordan*, 79 Or App 682, 685, 719 P2d 1327, *rev den*, 301 Or 667 (1986).

On appeal, defendant argues that police did not have probable cause to believe that she knew that the vehicles at issue were stolen. Thus, according to defendant, because both of her arrests were unlawful, all the evidence that was discovered during the subsequent searches incident to arrest (which formed the basis for her convictions on the methamphetamine and identity theft charges, as well as the UUV charges) should have been suppressed. We address each arrest in turn.

Just prior to the September 2012 arrest, police stopped a 1992 Mazda for a traffic violation. There were four people in the vehicle; defendant was the driver. When asked, defendant could not produce the car's registration or insurance information. In addition, police learned that her driver's license was suspended and, upon running the vehicle identification number (VIN) through a database, discovered that the vehicle had been reported stolen. Police arrested defendant.

Two cases are directly relevant to defendant's argument that the facts of the September arrest were insufficient to establish probable cause: *Rayburn*, 246 Or App 486, and *State v. Ayvazov*, 246 Or App 641, 267 P3d 196 (2011), *rev den*, 351 Or 675 (2012).

In *Rayburn*, police officers received a dispatch report of a red Honda being driven recklessly. 246 Or App at 488. Dispatch also reported that the Honda's license plate number matched that of a car that had been reported stolen. The officers located and stopped the car and ordered the four occupants to put their hands up. All complied except the driver, who said that he was unable to remove the key from the ignition. The defendant was riding in the front passenger seat. *Id.* During the ensuing inventory search of the car, police discovered drug paraphernalia and evidence that the car was being driven with a "shaved key." *Id.* at 489, 491. During trial, one of the officers testified that, "based on his experience, stolen vehicles are often started with a shaved key or screwdriver that can be impossible or difficult to remove." *Id.* at 488.

We observed that, although those facts might not support a finding of guilt beyond a reasonable doubt, the

threshold for probable cause is much lower. *Id.* at 492. "To establish probable cause, as opposed to guilt, the state needs to prove only that, *more likely than not,* defendant had the requisite mental state." *Id.* (citing ORS 131.005(11); emphasis in original). We held that the officers could reasonably conclude that it was more likely than not that the defendant knew he was not authorized to use the vehicle, where "four men are first seen standing around a stolen vehicle that has just been reported as being driven recklessly by a group of people, and then seen again driving away from where they were first seen." *Id.* at 493. We concluded that, although the "defendant's presence in the stolen car could have been explained under a variety of scenarios that did not involve his knowledge that it was stolen," none of those explanations was "more likely than the scenario that the officers believed to have occurred: [the] defendant and his friends had been joy-riding in a car that they all knew was stolen." *Id.* at 493.

In *Ayvazov,* police received a report that a man driving a green Honda was chasing a woman who was on foot. 246 Or App at 643. A short time later, police spotted a green Honda in a residential driveway. The defendant was in the front passenger seat and a woman was in the driver's seat. Police checked the license plate against a database and discovered that the car had been reported stolen. The defendant was arrested. *Id.* We concluded that, although the police knew of only a "few" facts suggesting that the defendant had committed the crime of UUV, those facts were sufficient to establish probable cause:

> "When they encountered defendant, the officers knew that a green Honda with the license plate of the car defendant was in had been stolen and that it had very recently been seen near the site of the arrest. They also knew that, when it was seen, it was being driven by a man who appeared to be attempting to run down a woman. From those facts, it was objectively reasonable for [police] to believe that the car that they saw in the driveway was stolen and that defendant had recently been seen driving it. Thus, although defendant was a passenger when the car was stopped, it was reasonably inferable that he had, in the very recent past, been its driver, and that he had been engaged in suspicious conduct. While those facts might not prove beyond

a reasonable doubt that defendant knew the car was stolen, they are sufficient to establish probable cause."

*Id.* at 647 (emphases omitted).

Based on the reasoning in *Rayburn* and *Ayvazov*, we conclude that the police in the September encounter had probable cause to believe that defendant had committed the crime of UUV. First, the police knew that the vehicle had been reported as stolen. Second, defendant was the driver, not merely a passenger. In *Ayvazov*, we reasoned that, although the defendant was in the passenger seat when the car was pulled over, it was inferable that he had been driving the car in the very recent past. That factor weighed in favor of finding probable cause. Third, as in both *Rayburn* and *Ayvazov*, there was an additional factor suggestive of defendant's guilt: She could not locate the vehicle's registration or insurance information.

On appeal, defendant argues that the mere fact that a person was driving or riding in a stolen vehicle is insufficient, without additional evidence of "suspicious conduct," to establish probable cause that the person knew that the vehicle was stolen. Defendant argues further that the facts of the September arrest do not amount to the type of "suspicious conduct" that was present in *Rayburn* and *Ayvazov*. That is so, according to defendant, because those facts do not tend to show that defendant knew that the Mazda was stolen. Defendant posits innocent explanations for why a person might be driving a car that had been reported as stolen, arguing that the person might have unwittingly bought or borrowed it from the thief. But defendant's inability to locate the car's registration and insurance information is a factor on which the police could reasonably rely in concluding that, more likely than not, defendant knew the vehicle was stolen. Viewed in total, the evidence surrounding the September arrest establishes probable cause.

We now turn to defendant's October arrest. The circumstances leading up to that arrest are also undisputed. A green Honda was reported stolen. Officer Ballew used a "LoJack" electronic tracking device to locate the vehicle in

a residential neighborhood.[1] When Ballew arrived at the scene, the green Honda was parked on the street, and defendant and another person, Corbit, were standing near the vehicle. A maroon Honda was parked directly in front of the green Honda. Ballew confirmed that the license plate on the green Honda matched that of the vehicle reported stolen. Ballew observed the two individuals for approximately one minute. Defendant was standing immediately behind the green Honda, close enough to reach out and touch the trunk of the car. Corbit was standing within the "wingspan" of one of its doors, which he eventually closed. No one else was visible on the street. The two would occasionally look at each other and appeared to be talking. From those observations, Ballew determined that defendant and Corbit were "associated" with one another and with the green Honda.[2]

---

[1] At the suppression hearing, one of the arresting officers testified that a "LoJack" is

"a tracking system that the manufacturer can have installed in the vehicle, and it allows us, once the report has been entered in the data system, they can activate it and it's like a GPS tracking device that we have in our cars where we can triangulate on these vehicles and try and recover them quickly."

[2] During the suppression hearing, Ballew testified that:

"I saw both a male and a female, and later identified as Mr. Corbit and [defendant]. I saw that Mr. Corbitt * * * had the door open. And at that point, he was standing outside of the vehicle in kind of the crook of the door.

"* * * * *

"I saw Mr. Corbit walk away from the green car towards a red car that was parked directly in front of it. And then I saw him come back to the green car door and then shut the door.

"[Defendant], I saw standing behind the green car, and so close to the car that she actually obscured partially, part of the license plate. * * *

"* * * * *

"[Defendant] was standing at the trunk. In police work, sometimes I use my trunk as a desk. So she was standing close enough to the trunk that she could've been using it as a desk.

"* * * * *

"The proximity to these—these people to each other made me believe they were together. The proximity to the car made me believe they were connected with the car.

"If I see your car out in the parking lot, I don't put my coffee cup on it, I don't lean on it. I don't get that close to your car, because I have a certain respect that that's your car, I don't need to be near it. So for them to be this close to a vehicle, made me believe that they had some sort of association with it and with each other.

Ballew radioed other officers to say that she had located the stolen vehicle and two suspects. Shortly thereafter Officers Wingfield and Wilcox arrived and both defendant and Corbit were arrested. Police searched defendant and discovered methamphetamine. After inventorying both vehicles, police also discovered evidence linking defendant to the crime of identify theft. At the suppression hearing, Wingfield testified that it is "fairly common" for people to work in pairs or groups when stealing vehicles.[3] He also testified that it is common for car thieves to "dump" a stolen vehicle and then to steal a new one. He explained that, after finding a stolen car, his practice is to "almost always" look for another stolen vehicle in the same area. Thus, Wingfield was suspicious that the maroon Honda may also have been stolen.

On appeal, defendant argues that police did not have probable cause to believe that she either rode in the green Honda or knew that it was stolen. Defendant relies on *State v. Hebrard*, 244 Or App 593, 260 P3d 759 (2011). In that case, police used a LoJack device to locate a stolen truck. *Id.* at 595. The truck was parked in a driveway in proximity to another vehicle and four individuals, including the defendant, were standing within 30 feet of the truck. All four were arrested. *Id.* at 595-96. The state argued that the following facts provided the arresting officer with probable cause to believe that the defendant had committed the crime of UUV:

> "(1) the officer knew that the truck had been stolen and someone other than its owner had been driving it; (2) the officer saw the stolen truck in the driveway; (3) the officer knew that the truck had been moving shortly before he arrived based on the LoJack signal and the skid marks

---

"They were looking at each other. I was too far away with my windows up to hear if they were talking together, but I believed that there was conversation going on between each of them. They were looking at each other. \* \* \*"

[3] Wingfield explained why car thieves find it advantageous to work in pairs. According to Wingfield,

"one person, he might steal exclusively Hondas. He knows how to work on them. Somebody else might have experience working on something else.

"And you know they learn from each other. They work together. And like I say, they have a, you know, a ready lookout there. So somebody to help, \* \* \* somebody to protect them and you never know when the homeowner is going to come out."

leading to the truck; (4) four individuals, including defendant, were within 20 to 30 feet of the truck; and (5) the truck was large enough to seat all four individuals. In addition, the officer who arrested defendant testified that, given the time and the circumstances, '[t]he assumption was that [all four people at the scene] were involved, or at least had knowledge.'"

*Id.* at 599 (brackets in original). We disagreed, reasoning that the "defendant's mere proximity to the stolen vehicle" was not sufficient to establish probable cause. We further explained that the arresting officer

"had no specific reason to believe that defendant had been in the truck. Nor did the officer have any reason to believe that any one of the four people had been in the truck. The officer assumed that, because four people could fit in the truck, four people were in the truck. That assumption may support reasonable suspicion, but not probable cause. \* \* \* Thus, the officer lacked probable cause because even though he had a substantial objective basis for believing that *someone* had committed the offense of unlawful use of a motor vehicle, it was not more likely than not that *defendant* had committed the crime."

*Id.* at 600 (emphases in original).

Here, defendant argues that, as in *Hebrard*, police had probable cause to believe that *someone* had committed the crime of UUV with respect to the green Honda, but not that *she* had committed that crime. Defendant argues that an equally plausible scenario is that Corbit drove the green Honda and that she arrived on foot or in a different car.

Simply put, the officers in this case had a stronger basis for suspecting defendant than did the police in *Hebrard*. In *Hebrard*, police simply assumed that all four people within 30 feet of the truck had been in the truck, even though the truck was parked at a residence next to another vehicle. Here, by contrast, police drew on several factors to inform their judgment that defendant was more likely than not involved in the unauthorized use of the car. First, Ballew spent time observing defendant's behavior; thus, her belief that defendant was "associated" with the stolen vehicle was based on visual evidence, not bare assumption.

Second, Wingfield testified that people who steal cars often do so in pairs *and* he articulated specific reasons for why that is so. We consider an officer's training and experience when determining whether probable cause exists. *Rayburn*, 246 Or App at 490. *See also State v. Daniels*, 234 Or App 533, 542, 228 P3d 695, *rev den*, 349 Or 171 (2010) (reasoning that the value of an officer's "training and experience" testimony often depends on whether the officer has persuasively explained the basis of his or her knowledge).

Thus, at the time of defendant's arrest, police knew: (1) that they had found a stolen green Honda that had recently been driven, (2) that defendant and codefendant were standing within arms' length of that car, (3) that there was no one else on that street who could have driven the car, (4) that "there was conversation" between defendant and codefendant, and (5) that car thieves commonly work in pairs. Those circumstances provided the officers with probable cause to believe that defendant had committed the crime of UUV. Accordingly, the arrests of defendant, and the searches performed incident to those arrests, were lawful.

For the foregoing reasons, we conclude that the trial court correctly denied defendant's motion to suppress.

Affirmed.