342 June 26, 2024 No. 418

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DYLAN LEE MENDELL,
*Defendant-Appellant.*

Benton County Circuit Court
20CR05787; A179861

Locke A. Williams, Judge.

Submitted April 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Anna Johnson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

Jacquot, J., concurring.

**AOYAGI, P. J.**

Defendant appeals the denial of a motion to suppress. Defendant was pulled over while driving at night, because his license plate was unreadable as a result of glare from a clear plastic cover on the plate. The sheriff's deputy who made the stop believed that he had probable cause for a violation of ORS 803.550, which prohibits knowingly displaying an "altered, modified, covered or obscured" license plate. During the stop, the deputy obtained evidence that defendant was intoxicated. Defendant was subsequently charged with driving under the influence of intoxicants, ORS 813.010. Before trial, defendant moved to suppress the intoxication evidence, arguing that the deputy lacked probable cause for the initial traffic stop. The trial court denied the motion. It concluded that "[t]he plastic covering affixed to the license plate constituted an alteration of the license plate, and obscured the license plate, as those terms are used in ORS 803.550(2)." For the following reasons, we affirm.

The relevant facts are undisputed. One night, a sheriff's deputy was driving behind defendant's car. A clear plastic cover over defendant's license plate reflected the deputy's headlights such that the glare made the plate unreadable. The cover was "very, very reflective" and caused the deputy's headlights to reflect back "like looking into a mirror." The deputy pulled closer to defendant's car, but the plate remained unreadable due to the glare off the cover. Believing that he had probable cause for a violation of ORS 803.550, the deputy initiated a traffic stop. Approaching defendant's car on foot, with the car stationary and no headlight glare, the deputy could easily read defendant's plate.

Defendant contends that, under the circumstances, the deputy did not have probable cause to stop him or, at the least, that probable cause dissipated once the deputy got out of his vehicle and was able to read defendant's plate. He argues that the stop was therefore an unlawful seizure in violation of Article I, section 9, of the Oregon Constitution. The gist of defendant's argument is that the clear cover did not alter or obscure any of the numbers, letters, or registration stickers on the plate, or render the plate unreadable,

and that ORS 803.550 requires more than "temporary" obscurement caused by the glare from headlights. The state maintains that the deputy had probable cause for a violation of ORS 803.550. We review for legal error. *State v. Cowan*, 330 Or App 149, 150, 542 P3d 905 (2024).

"To conduct a stop for a traffic violation, Article I, section 9, requires that an officer have probable cause to believe that a violation occurred." *State v. Sullivan*, 322 Or App 563, 565, 520 P3d 911 (2022), *rev den*, 370 Or 827 (2023). "Probable cause exists where an officer subjectively believes that it is more likely than not that an offense occurred and where that belief is objectively reasonable." *Id.* Here, it is undisputed that the deputy had the requisite subjective belief; the question is objective reasonableness.

ORS 803.550—which uses the term "registration plate" for what is commonly referred to as a license plate—provides, in relevant part:

"(1)   A person commits the offense of illegal alteration or illegal display of a registration plate if the person knowingly does any of the following:

"*  *  *  *  *

"(c)   Operates any vehicle that is displaying a registration plate that is illegally altered in a manner described in subsection (2) of this section * * *.

"*  *  *  *  *

"(2)   A registration plate is illegally altered for purposes of this section if the plate has been *altered, modified, covered or obscured in any manner including, but not limited to, the following*:

"(a)   Any change of the color, configuration, numbers, letters or material of the plate.

"(b)   Any material or covering, other than a frame or plate holder, placed on, over or in front of the plate that alters the appearance of the plate.

"(c)   Any frame or plate holder that obscures the numbers, letters or registration stickers, so as to render them unreadable."

(Emphasis added.) *See also* ORS 803.550(8) (making illegal alteration or illegal display of a registration plate a Class B traffic violation).

Thus, a license plate is "illegally altered" for purposes of ORS 803.550 if it is "altered, modified, covered or obscured in any manner," including but not limited to the placement of "[a]ny material or covering * * * over or in front of the plate that alters the appearance of the plate."[1] The parties' disagreement as to the meaning of that statutory language is fairly narrow. Defendant does not contest that his license plate was covered by a clear plastic material. Meanwhile, the state implicitly acknowledges that covering one's license plate with a clear plastic material violates ORS 803.550 only if it alters the appearance of the plate or obscures the plate numbers and letters so as to make them unreadable. That construction is consistent with the legislative history. *See State v. Stearns*, 196 Or App 272, 281-83, 101 P3d 811 (2004) (discussing the legislative history of the original bill creating ORS 803.550, including that the law was proposed "in response to a concern that many citizens were painting and intentionally altering their registration plates to avoid identification" and that the goal of the law was to address "something that covers up the identifying numbers" on a plate (emphasis and internal quotation marks omitted)); Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 11, 1985, Tape 13, Side B (the law was proposed by the Department of Motor Vehicles and the Oregon State Police to address a "growing trend" of altering license plates in a manner that made them unreadable by the police).[2]

_____

[1] The trial court found, and it is undisputed for purposes of appeal, that the plastic covering over defendant's license plate was not a "plate holder." Consequently, the specific example of alteration in ORS 803.550(2)(c) does not apply, but that nonexclusive example still provides some relevant context for what the legislature meant by "altered, modified, covered or obscured" in ORS 803.550(2).

[2] *See also* Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 11, 1985, Tape 13, Side B (statement by Senator Jane Cease identifying "obscuring the identification number or changing the identification number or the color or those things" as "really what we're trying to get at"); Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 18, 1985, Tape 15, Side A (statement by Senator William Frye indicating that "cover or obscure" means covered so as to make the plate letters or numbers indecipherable).

The parties' disagreement comes down to whether obscurement or unreadability caused by headlight glare off a clear plastic plate cover—an issue that arises only during night driving—gives rise to a violation of ORS 803.550.

We conclude that it does. Based on the text, context, and legislative history of the statute, a person who knowingly operates a vehicle with a license plate covered by "[a]ny material" that causes the letters and numbers on the plate to be unreadable in normal driving conditions—even if not *all* driving conditions—violates ORS 803.550. Here, the record establishes that defendant's plate was unreadable in normal nighttime driving conditions because of the clear plastic material covering the plate. That created probable cause to stop defendant, because the officer's subjective belief that it was more likely than not that defendant had violated ORS 803.550 was objectively reasonable.[3] *See Cowan*, 330 Or App at 154-55 ("[T]he evident purpose of ORS 803.550 is to ensure that registration plates serve their proper function by requiring that they be easily readable and by authorizing higher penalties for drivers who knowingly display plates that have been altered in any manner, regardless of who or what caused the alteration.").

Moreover, probable cause did not dissipate once defendant parked his car and the deputy approached on foot, at which point the plate was easily readable. Nothing in the text, context, or legislative history of the statute suggests that a license plate may be altered without violating ORS 803.550 as long as it is readable when the car is parked, even if it is not readable while being driven.

In sum, the trial court did not err in concluding that the deputy had probable cause for the initial traffic stop and consequently denying defendant's motion to suppress.

Affirmed.

---

[3] In his motion to suppress, defendant argued that the deputy lacked probable cause because it was not objectively reasonable to believe that defendant had engaged in conduct that violated ORS 803.550. Defendant did not challenge the deputy's subjective belief, nor did he develop any argument about the required mental state for a violation. Defendant addresses only the objective-belief aspect of the conduct element on appeal, so we do the same.

**JACQUOT, J.,** concurring.

I agree with the reasoning and result reached by the majority. I write separately only to highlight a problem that I see in our case law about ORS 803.550's mental-state element and the probable-cause requirement.

ORS 803.550 requires that a person "knowingly" commit the acts prohibited by the statute. "[W]hen used with respect to conduct or to a circumstance described by a statute defining an offense," the term "knowingly" "means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8). To commit the traffic offense at issue here, then, defendant must have been aware that he was operating his vehicle while his license plate was obscured by glare. At least, that is what the state would have to prove at a trial in traffic court. But how does that mental-state requirement affect the probable-cause analysis?

That is where the problem lies. On the one hand, our case law is clear that, "[t]o stop and detain a person for a traffic violation," Article I, section 9, of the Oregon Constitution requires an officer to "have probable cause to believe that the person has committed a violation." *State v. Derby*, 301 Or App 134, 138, 455 P3d 1009 (2019). And probable cause requires that "the facts that the officer perceived, either personally or as relayed to the officer, must in fact satisfy the elements of [an offense]." *State v. Lipka*, 314 Or App 154, 164, 498 P3d 811, *rev dismissed,* 368 Or 703 (2021). "[W]hen the facts an officer perceives do not meet the essential elements of the violation, probable cause is lacking." *Id.* at 165. That is all well-settled.

However, in *Lipka*, we added a concerning caveat to that well-settled statement of law:

> "[T]o support probable cause, an officer need only perceive facts sufficient to establish the essential elements of a statutory violation, *not necessarily facts with respect to every element, attendant circumstance, or culpable mental state required to ultimately convict a person of the crime.*"

*Id.* (emphasis added; internal citations omitted). In support of that caveat we relied specifically on *State v. Boatright*, 222

Or App 406, 193 P3d 78, *rev den*, 345 Or 503 (2008)—a case about whether an officer had probable cause that the defendant had violated ORS 803.550. *Lipka* relies on *Boatright* for the proposition that "whether the defendant *knowingly* violated ORS 803.550 was not material to [the] determination of objective probable cause, even if [the] state arguably would be required to prove knowledge to obtain a conviction." *Lipka*, 314 Or App at 165 (emphasis in original). There are at least three problems with *Lipka*'s caveat—not the least of which is its misuse of *Boatright*.

First, *Lipka* does not explain how a culpable mental state (or any other material element necessary to obtain a conviction) is nonetheless not an "essential element" of an offense. Nor can I find any other decision explaining such a distinction in the probable-cause context. Almost by definition, any "element," including a culpable mental state, required to ultimately convict a person of an offense is an "essential element" of that offense. *See State v. Rayburn*, 246 Or App 486, 492, 266 P3d 156 (2011), *rev den*, 351 Or 675 (2012) ("To establish probable cause, *** the state needs to prove only that, more likely than not, defendant had the requisite mental state." (Citing ORS 131.005(11); emphasis omitted.)).

Second, it was not necessary for our ultimate decision in *Lipka* to declare that probable cause does not extend to all elements necessary for a conviction, which renders its caveat *dicta*. That is because *Lipka* ultimately assumed without deciding that probable cause existed. 314 Or App at 168.

Finally, *Lipka* misused *Boatright* to support its statement of law.[1] In *Boatright*, the design of the defendant's rear bumper was such that it "obscure[d] the registration sticker that showed the year of expiration of the license plate when the plate was viewed from the position in which another motorist would view it." 222 Or App at 411. Because of the static nature of that design, it would always obscure the registration stickers. On that record, we concluded that

---

[1] *Lipka* also relied on *State v. Gibson*, 268 Or App 428, 342 P3d 168 (2015), to support its statement of law. *Lipka*, 314 Or App at 165. But in *Gibson*, we simply held that probable cause could exist even if it was unknown precisely which of the alternate methods of committing the offense the defendant had committed. 268 Or App at 437.

was objectively reasonable for an officer to believe that a person in the defendant's position would know that their license plate was improperly obscured. *Id.* at 413; *see also State v. Cowan*, 330 Or App 149, 155, 542 P3d 905 (2024) (holding that there was probable cause that the defendant violated ORS 803.550 due to the "worn out" condition of the registration plate that made it unreadable even in daylight). In other words, we concluded that the officer had probable cause that the defendant was displaying an illegally altered plate *and* that the defendant acted "knowingly."

Put simply, *Lipka*'s caveat is *dicta* for which I can find no other support in our case law, and it incorrectly suggests that an officer can have probable cause to stop a person under ORS 803.550 without probable cause that the person is acting "knowingly." In my view, that is incorrect: To stop a person for violating ORS 803.550, an officer needs probable cause as to every material element of the offense, including that the person acted knowingly.

Here, at least on the record developed below, it is likely that the deputy lacked probable cause that defendant acted knowingly. The problem is that defendant's clear plastic plate cover did not illegally alter his registration plate in all (or even most) circumstances. Absent glare, the cover did not distort the license plate's appearance or affect its readability. The cover ran afoul of ORS 803.550 only due to glare, which itself arose only as a consequence of variables outside of defendant's control: ambient lighting, the location of light sources, and the location of the observer. All of those variables are such that it would have been unlikely that defendant—sitting in the driver's seat of his car—knew that glare had temporarily rendered his license plate unreadable. And there is no evidence to suggest that defendant's cover was one specifically designed to obscure a plate by way of reflectivity, such that defendant would have known about the high likelihood of glare if he purchased and installed it.

Nevertheless, I recognize that defendant has never argued that the deputy lacked probable cause regarding his mental state, so that issue is not preserved nor was the record specifically developed on that issue. Therefore, I concur with the majority.